1    ROBBINS GELLER RUDMAN
         & DOWD LLP
2    SHAWN A. WILLIAMS (213113)
     Post Montgomery Center
3    One Montgomery Street, Suite 1800
     San Francisco, CA  94104
4    Telephone:  415/288-4545
     shawnw@rgrdlaw.com
5            – and –
     BRIAN E. COCHRAN (286202)
6    655 West Broadway, Suite 1900
     San Diego, CA  92101-8498
7    Telephone:  619/231-1058
     bcochran@rgrdlaw.com
8
     Attorneys for Plaintiff
9
     [Additional counsel appear on signature page.]
10
                        UNITED STATES DISTRICT COURT
11
                      NORTHERN DISTRICT OF CALIFORNIA
12

13   MARIEL WEBER, Individually and on Behalf )   Case No.  3:24-cv-09467
     of All Others Similarly Situated,        )
14                                            )   CLASS ACTION
                           Plaintiff,         )
15                                            )   COMPLAINT FOR VIOLATIONS OF THE
        vs.                                   )   FEDERAL SECURITIES LAWS
16                                            )
     NEXTRACKER INC., DANIEL SHUGAR,          )
17   DAVID BENNETT, HOWARD WENGER,            )
     and CHARLES BOYNTON,                     )
18                                            )
                           Defendants.        )
19   _____)   DEMAND FOR JURY TRIAL

20

21

22

23

24

25

26

27

28

Plaintiff Mariel Weber ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings of Nextracker Inc. ("Nextracker" or the "Company"), the Company's press releases, and analyst reports, media reports, and other publicly disclosed reports and information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of purchasers of Nextracker common stock between February 1, 2024 and August 1, 2024, both dates inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "1934 Act") against Nextracker and certain of the Company's senior officers and directors.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act, 15 U.S.C. §78aa.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), and §27 of the 1934 Act, because Nextracker is headquartered in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

4. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

5.    Plaintiff Mariel Weber, as set forth in the certification attached hereto and incorporated by reference herein, purchased Nextracker common stock during the Class Period and suffered damages as a result.

6.    Defendant Nextracker is headquartered in Fremont, California.  The Company provides software that enables solar panels to follow the sun's movement across the sky and related products and services.  Nextracker common stock trades on the NASDAQ under the ticker symbol "NXT."

7.    Defendant Daniel Shugar ("Shugar") was at all relevant times the Chief Executive Officer ("CEO"), and a co-founder of Nextracker.

8.    Defendant David Bennett ("Bennett") was Nextracker's Chief Financial Officer ("CFO") during the Class Period until May 2024, when he transitioned to be the Company's Chief Accounting Officer.

9.    Defendant Howard Wenger ("Wenger") was at all relevant times President and a director of Nextracker.

10.    Defendant Charles Boynton ("Boynton") has been CFO of Nextracker since May 2024.

11.    The defendants referenced above in ¶¶7-10 are collectively referred to herein as the "Individual Defendants."  The Individual Defendants, together with Nextracker, are referred to herein as "Defendants."

12.    Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, services, competition, acquisition plans, and present and future business prospects, as alleged herein.  In addition, the Individual Defendants were involved in drafting, producing, reviewing, and/or

disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

13.     As officers and controlling persons of a publicly held company whose securities are registered with the SEC pursuant to the 1934 Act and trade on the NASDAQ, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, services, markets, competition, acquisition plans, and present and future business prospects.  In addition, the Individual Defendants each had a duty to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded common shares would be based upon truthful and accurate information.  Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance, participated in conference calls with investors during which false and misleading statements were made, and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

**BACKGROUND**

15.     Nextracker is a supplier of software solutions and products that enable solar panels to follow the sun's movements across the sky to optimize utility power plant performance.

16.     In February 2023 Nextracker completed its initial public offering ("IPO"), spinning off from Flex Ltd. ("Flex"), an international electronics manufacturing services ("EMS") and original design manufacturer ("ODM").   In January 2024, Nextracker announced that Flex had completed the spin-off and sale of its remaining interests in the Company.

17.     Nextracker's customers include engineering, procurement, and construction firms ("EPCs"), as well as solar project developers and owners.  Developers originate projects, select and acquire sites, obtain permits, select contractors, negotiate power offtake agreements, and oversee the building of projects.  EPCs design and optimize the system, procure components, build and commission the plant, and operate the plant for a limited time until transfer to a long-term owner.  Owners, which are often independent power producers, own and operate the plant, typically as part of a portfolio of similar assets.  Owners generate cash flows through the sale of electricity to utilities, wholesale markets, or end users.

18.     The solar tracker market increases energy production and improves the levelized cost of energy ("LCOE"), the average cost of electricity generation over the lifetime of an energy asset.  Thus, the majority of utility-scale projects installed today in mature markets use solar traction, and adoption of the technology is growing in developing markets.  The United States is the Company's most important and profitable market, generally accounting for more than two-thirds of its business.

19.     In order to incentivize the installation of solar facilities in the United States, the U.S. government passed the Inflation Reduction Act of 2022 ("IRA").   The IRA entitles manufacturers that support clean energy in the United States with a tax credit for each clean energy component domestically produced and sold by a manufacturer.  As a result of the proliferation in solar installations following the passage of the IRA, leading up to the IPO Nextracker reported

robust growth.  For the fiscal year ended March 31, 2022, the Company reported $905 million in annual revenue for its U.S. business, representing 62% growth over the prior year period.[1]

20.    Investors closely track Nextracker's backlog, viewing it as a measure of the health of Nextracker's business.  Nextracker defines backlog as executed contracts or purchase orders with deposits and specific bills of material for specific projects with indicated start dates.  The length of time it will take the Company to fulfill backlog orders is highly material to investors, as this will determine the rate at which Nextracker is expected to recognize revenue from its work on contracted projects in future periods, and thus provides an important indication of the Company's revenue trajectory and expected growth rate.  As of March 31, 2023, Nextracker stated that its backlog had grown to $2.6 billion, representing a 90% increase year-over-year.  By Nextracker's third fiscal quarter ended December 31, 2023, the Company's backlog had grown to record levels, significantly exceeding $3 billion.  Nextracker's revenue and adjusted earnings had risen in tandem, growing to $710 million (up 38% year-over-year) and $168 million (up 168% year-over-year) during the quarter, respectively.

21.    The solar tracking industry is subject to the risk that projects may become delayed due to a variety of reasons, such as an inability to timely secure necessary permits for project completion, the unavailability of project components or materials, regulatory hurdles, inclement weather, or construction setbacks.  In Nextracker's IPO prospectus, the Company stated that delays were possible and "could have a material adverse effect on [its] business, financial condition and the results of operations."

22.    Despite the possibility of project delays and the materially adverse nature of such occurrences to the Company's business and prospects, leading up to and during the Class Period, defendants repeatedly downplayed the impact that project delays were having on the Company's

---

[1]    The Company's fiscal year ends on March 31 of the calendar year.

business and financial results, representing that any delays were limited to isolated projects, more than offset by expanding business opportunities and client demand (which supported repeated guidance raises), and in line with historical trends.  Company executives expressly disavowed that Nextracker was suffering from the same ill effects arising from project delays affecting the rest of the solar tracking industry, claiming that the Company had avoided comparable problems in the face of such headwinds because of its purported competitive advantages and robust client demand.

23.     In May 2023, during Nextracker's first earnings call as a public company, defendant Shugar reassured analysts inquiring about the possibility for project delays to negatively impact the Company, stating: "You can have issues where a construction permit is delayed.  But in aggregate, there are so many projects and so much demand.  That's why we're seeing our revenue keep going up and our plan keep going up."

24.     Similarly, during a July 2023 earnings call, defendant Shugar claimed that Nextracker was able to offset any individual project delays by simply prioritizing other projects in the Company's pipeline, stating in pertinent part:

> So with respect to a project permitting, first, our increased guidance reflects the environment that we're operating in, our expectations.  ***Any individual project can be pushed there is an enormous portfolio of projects that we're supporting.  So we take those factors into account where entitlements are either granted or we consider upcoming projects on a probabilistic basis based on the level of entitlements and where they stand.  An advantage for us in managing so many projects in so many geographies is that if one project has slowed down, there's usually another wanting to take its place***.

25.     Later, when asked to elaborate on the magnitude of delays in permitting and solar panel availability, defendant Shugar responded: "Typically, it's just business as usual . . . ." Defendant Shugar continued in pertinent part:

> [T]here'll be a few jobs that have an issue.  Whether it's a permit issue or a panel issue or something.  We're confident in our forecast and which is why we increased our guidance 10% – I'm sorry, 5% of revenue as covered by day and 10% on earnings, ***we're not seeing delays in orders***.  We're seeing projects proceeding, but then there'll be occasional projects that have – they – every project requires a local jurisdiction to issue a building permit.  Just like if you're adding a bathroom at your house or something you need a permit for that.  And so some local jurisdictions,

there's delays in what was originally anticipated by the project. ***But in aggregate, the overall demand, we're seeing strong demand and strong fulfillment with occasional delays, but in aggregate, we're able to grow and increase our guidance***.

26.    During an October 2023 earnings call, defendant Shugar conveyed similar confidence that Nextracker was purportedly experiencing "not a new" level of permitting delays, and that any such delays were project specific rather than widespread and more than offset by increasing demand and Nextracker's ability to prioritize other projects in the construction queue. Defendant Shugar stated in pertinent part:

> [E]ven within a given customer, they have 1 project that's delayed, ***often they'll have another project, which can fill its gap.***
>
> Now for sure, there's been individual projects that experienced delays that happens. ***That's not a new thing. We've just seen just a huge amount of demand in the markets in the U.S. and abroad and our record results in terms of revenue recognition, bear that out from what we've accomplished so far and our confidence that, that's going to continue, has enabled us to increase our guidance on revenue for this year***.

27.    In November 2023, Nextracker's biggest competitor, Array Technologies, Inc. ("Array") revealed that it was suffering from significant interconnection and panel availability issues that were causing project delays and shifts in the timelines for project completion "for a couple of quarters now."  Array added that delays were also being caused by customers awaiting clarity around the IRA.

28.    Even after acknowledgments by others in its industry that delays were negatively affecting project timelines, Nextracker and its management continued to claim that the Company was not being similarly impacted by project delays, as any setbacks with respect to an individual project were more than set off by the ability of the Company to move to the front of the queue other projects given the robust demand environment that Nextracker was purportedly experiencing for its products and services.  For example, during a January 5, 2024 Goldman Sachs investor conference, defendant Bennett claimed that Nextracker was not experiencing a "delay in booking deals because of a lack of clarity with [the] IRA."  He further stated that while industry "headwinds

are real," they were offset by "significantly stronger" tailwinds.  Defendant Bennett stated in

pertinent part as follows:

> You spoke about headwinds.  The headwinds are real.  We have interconnection permitting labor to some extent panel availability for the U.S.  Sometimes all of those are real.  ***However, we see the tailwinds being significantly stronger than those headwinds***.  And an example of what NEXTracker does to manage through those is just think about it.  As a few years ago, we'd have 50 projects and you'd see a delay of one or two of those projects related to some permitting or interconnects.  Today, we see more pushouts for interconnection panels and labor.  ***However, where we had 50 projects in the pipeline, we now have 250.  So we have the ability to manage and pivot to a different project and meet our commitments.  So it's one of those things that these headwinds are new.  It's something we've been working with.  And the NEXTracker team has very deep experience in dealing with these things, working with our with our EPC partners, owner developers and managing to the timelines of projects that enable us to meet our economic commitments.  And that's what we're doing***.

29.     During the Class Period, defendants continued to minimize the impact of project delays on Nextracker's business, claiming that the delays were isolated to individual projects and that the Company was simply better at managing project timelines than its competitors and that favorable financial and operating trends purportedly more than offset any adverse effects.

30.     Unbeknownst to investors, as defendants knew or recklessly disregarded, these assurances were materially false and misleading when made.  In reality, Nextracker was suffering the negative effects of panel availability and interconnection and permitting delays, as well as delays caused by customers awaiting clarity on the IRA, to a far greater extent than previously disclosed, which had negatively and materially impacted the Company's ability to convert its backlog to revenue in line with its historical conversion rates.  Furthermore, the purported increase in client demand and Nextracker's ability to shuffle project timeliness was not effectively offsetting the negative impact of these project delays, leading to elongated project timelines and rendering the purported competitive advantages highlighted by defendants illusory.  Defendants' failure to disclose these adverse facts caused the price of Nextracker stock to trade at artificially inflated prices, reaching a high of over $62 per share during the Class Period.

**MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS DURING THE CLASS PERIOD**

31. The Class Period begins on February 1, 2024. On January 31, 2024, after the market closed, Nextracker issued a release announcing the Company's financial results for its third fiscal quarter ended December 31, 2023 (the "3Q24 Release"). The release reported a 38% year-over-year increase in quarterly revenue to $710 million, a 168% year-over-year increase in quarterly adjusted EBITDA to $168 million, and "[r]ecord" backlog. The release also revised Nextracker's 2024 annual outlook upward, increasing: (i) revenue to a range of $2.425 billion to $2.475 billion, from a range of $2.3 billion to $2.4 billion; (ii) adjusted EBITDA to a range of $475 million to $500 million, from a range of $390 million to $440 million; (iii) GAAP net income to a range of $374 million to $429 million, from $237 million to $266 million; and (iv) adjusted diluted EPS to a range of $2.55 to $2.75, from a range of $1.95 to $2.15. In the release, defendant Shugar stated that "'Nextracker achieved a record third quarter, outperforming across revenue, profit and backlog, which reflects strong execution and spotlights our capability to meet customer requirements.'" Defendant Shugar further stated that Nextracker was "'well positioned as the global leader in trackers and we're just getting started.'"

32. Also on January 31, 2024, Nextracker held an earnings call with analysts and investors to discuss Nextracker's third quarter 2024 results hosted by defendants Shugar, Wenger, and Bennett. In his prepared remarks, defendant Shugar highlighted "another strong quarter" that resulted in "record revenue, profits and backlog." Defendant Shugar claimed that Nextracker now had backlog "significantly exceeding $3 billion," and pointed out that this was "the third consecutive quarter we've raised our revenue and profit guidance." Defendant Shugar highlighted "multiple headwinds and tailwinds impacting solar development velocity" in the United States, the Company's most important market. He stated that "in totality" the tailwinds of increased demand

continued to offset the headwinds of "specific project" delays and that the conditions causing delays were improving, stating in pertinent part:

> Starting with the United States.  As covered on our previous calls, there are multiple headwinds and tailwinds impacting solar development velocity.  Headwinds, including interconnection backlogs, permitting delays and equipment shortages are real and can impact any specific project, EPC or developer.  ***But in totality, the combination of new entrants in both developers and EPCs and the increasing number of projects in their portfolios has allowed the market to continue expanding***.
>
> ***Solar panel availability in the United States has improved significantly over recent quarters.  And as things stand today, we are not seeing panel availability as a first-order problem in the market.***  There are, however, multiple trade proceedings pending, which could impact panel imports from certain geographies into the US.  We will need to see how this evolves over time to determine any potential impact.

33.    Defendant Wenger added that any project delays during the quarter were "more than offset by other projects pulling in ahead."  He added that Nextracker "had another excellent quarter for new business with a book-to-bill ratio greater than one."  In regard to the IRA tax credit, defendant Wenger stated that they were "not seeing a significant impact on US project deliveries or on new bookings."  He added that "[c]ustomers and projects are transacting.  And as we have outlined in previous earnings calls, we continue to see positive demand activities as our backlog continues to grow."

34.    During the question-and-answer portion of the call, defendant Wenger was asked by an analyst whether any sizable projects that were pulled forward were responsible for the increased guidance.  Defendant Wenger maintained that "[i]t really is just broader market acceleration."  Defendant Wenger added that "there's simply more developers and more EPCs" and "we're doing a good job . . . winning the share of the business . . . the demand strength is there."

35.    Analysts hailed defendants' claims that Nextracker was apparently not suffering from the same project delays that were affecting the rest of the industry.  For example, *Barron's* reported that "Nextracker Is the Rare Solar Stock That Isn't Suffering From Slowing Demand."

Similarly, analysts at BofA Securities noted that Nextracker's purported ability to avoid project delays from impacting its portfolio and revenue conversion was in "contrast to [its] peers." On the basis of defendants' representations, price of Nextracker stock jumped by nearly 25% to $56.50 per share on February 1, 2024.

36. On February 7, 2024, Nextracker filed with the SEC on Form 10-Q the Company's financial results for its third fiscal quarter ended December 31, 2023, which was signed by defendants Shugar and Bennett. The Form 10-Q contained the financial information regarding Nextracker's quarterly financial results contained in the 3Q24 Release.

37. On March 5, 2024, defendant Shugar spoke about Nextracker at the Bank of America Power, Utilities & Clean Energy Conference. The first question posed to defendant Shugar was how he expected Nextracker to grow in light of the hurdles to growth apparently affecting its peer companies. In response, defendant Shugar represented that the "tailwinds in totality are stronger than the headwinds" and that Nextracker was better able to navigate the headwinds than its peers, stating in pertinent part:

> So there are headwinds and there's tailwinds. We've seen companies that are underperforming in this space, really highlighting a lot of the headwinds. Those headwinds include, permitting delays, interconnection queue delays, equipment shortages, labor issues, inflation, costs and capital, are all those things real, definitely they're all real and those things can impact any individual project.
>
> ***That's true. But the tailwinds in totality are stronger than the headwinds*** . . . .
>
> \*       \*       \*
>
> ***But from a financial standpoint, you're way better off today than you were 18 months ago, clearly***.
>
> Okay. Now with respect to the implementation issues we spoke to, hey, it's taking longer to get things permitted, that's true. I've got interconnection queues problems with PJM or these other grids we're trying to connect with. That's a fact.
>
> But the universe of developers, the number of projects at each developer, the size of the projects that the developer owners and the universe of EPCs, engineering, procurement, construction companies that build these is vastly larger. So we have this huge pool of participants in the space, because there's incredible profit opportunity for them and folks are moving to they want to decarbonize.

*There's real goals out there with utilities and others to get this done. So in totality, you're seeing the market up and to the right, which is why Nextracker has sustained a 30% annually compounded growth up through our projection, which is up through the end of this of our fiscal year closes at the end of this month*.

38. On March 18, 2024, defendant Wenger spoke about Nextracker at the Roth Conference. The first question posed by the host was how Nextracker was apparently "able to avoid showing any of that slowdown" affecting its competitors. Again, defendant Wenger claimed that elevated demand and the ability to pull forward projects was offsetting any "particular project" delays, stating in pertinent part:

First of all, what we do is we pull back and look at the macro demand for solar power and it's strong still globally in the key markets. And the US being the number one market in the world for large scale outside of China, and that's both in volume. And also the economics are superior in the United States and so what we're seeing is actually increased levels of development, meaning more investment from development and owners in large-scale solar.

*We're seeing our pipeline is actually growing over time. It's strong there are headwinds and tailwinds we talk about. There are a number of headwinds that can cause a particular project in an owner's portfolio to move to the right and be delayed. It can be a high-voltage transformer or switchgear or not getting an interconnection agreement or not getting final approval to move forward*.

*So things can move. We've seen some projects pull forward and for us, being the market share leader, we have about 34% global market share and tracking. We have – and the three of our businesses outside of the United States. We have a diversified enough portfolio that we're managing to. And so far, the results speak for themselves. We've been up and into the right and growing*.

39. On May 14, 2024, Nextracker issued a release which announced the Company's financial results for its fourth fiscal quarter and full year ended March 31, 2024 (the "FY24 Release"). The release reported a 42% year-over-year increase in quarterly revenue to $737 million and a 120% year-over-year increase in quarterly adjusted EBITDA to $160 million. For the full year, the release reported a 31% year-over-year increase in revenue to $2.5 billion and a 150% increase year-over-year in adjusted EBITDA to $521 million, with an end-of-the-year backlog of over $4 billion. The release also provided annual fiscal 2025 guidance of: (i) revenue in a range of $2.8 billion to $2.9 billion; (ii) adjusted EBITDA in a range of $600 million to $650

million; (iii) GAAP net income in a range of $369 million to $399 million; and (iv) adjusted diluted EPS in a range of $2.89 to $3.09.  In the release, defendant Shugar stated that "'[f]iscal year 2024 was a year of strong execution and significant growth for Nextracker, and we reached a record backlog of over $4 billion that more than tripled in 2 years.'"  Defendant Shugar continued: "'We've accelerated our pace of product innovation, scaled global revenue and supply chain, more than doubled our profits from the prior year, and exceeded all elements of our full year guidance.'"

40.    Also on May 14, 2024, Nextracker held an earnings call with analysts and investors to discuss Nextracker's fiscal year 2024 results hosted by defendants Shugar, Wenger, and Bennett.  In his prepared remarks, defendant Shugar stated that "strong execution by Team Nextracker enabled us to achieve record revenue, profits, and backlog."  Defendant Shugar added that "[s]trong sales momentum globally resulted in a new record backlog of over $4 billion," a 50% increase over the prior year and triple Nextracker's backlog two years ago.  Defendant Shugar dismissed concerns about project delays, stating that the Company's strong growth rate and backlog more than offset any negative impacts "in totality," stating in pertinent part:

> Nextracker's history of 30% CAGR over the last five years reflects favorably on the EIA forecasts, as does our strong backlog.  On prior earnings calls, we've had questions regarding sector headwinds in interconnection, permitting, and other areas.  ***We noted that these headwinds can be real for any given project or customer, but that the total universe of projects in customers has grown such that in totality, the market continued strong growth***.

41.    In his opening remarks, defendant Wenger stated that Nextracker's backlog had increased every quarter since its February 2023 IPO and was "supportive of [the Company's] fiscal year '25 guidance."  Defendant Bennett added that "[t]here was strong execution by our teams in progressing projects to plan this quarter."

42.    During the question-and-answer portion of the call, defendants were asked whether they were seeing any elongation of the time to convert Nextracker's backlog into revenue.  In response, defendant Wenger denied this was occurring, stating that "we're pleased with the growth

of our backlog" and that "[t]ypically" backlog converts to "revenue in two to eight quarters, and most of that in two to five quarters."

43.    Later during the call, an analyst questioned how much Nextracker had "pull[ed] forward" projects to support 2024 results, which could negatively impact Nextracker's fiscal 2025. In response, defendant Bennett maintained that "[n]one of it was pulled into '24 from '25." Another analyst asked defendant Bennett whether Nextracker's guidance for fiscal 2025 was conservative. In response, defendant Bennett asserted that any timing delays and other headwinds were "not meaningfully different" than the Company had experienced in the past and already factored into defendants' guidance and comments to investors, stating in pertinent part:

> Yes, I think Howard just really kind of touched on this with the – you know, it's about individual projects and their timing to delivery and the content of our backlog that we consider VCAs and EPC contracts the same in that backlog now. ***So relative to the rollout, Howard touched on it at a two-to-eight-quarter clip. I think in the past that's not meaningfully different, but the specific projects that are in that backlog have a timing to ship now, and that really is what supports our guide. And keep in mind, our guide has historically – we've proven to you guys that we do factor in the headwinds that can happen. I spoke to it every quarter. We kind of factor in a little conservatism relative to weather and other things in logistics may happen that push individual deliveries out that may impact or achieving a number. So we've factored that into our guide. And overall, I think you can see the strong backlog, at a record over $4 billion, certainly supports the guidance range***.

44.    On May 28, 2024, Nextracker filed with the SEC on Form 10-K the Company's financial results for its fiscal year ended March 31, 2024, which was signed by defendants Shugar, Bennett, and Wenger. The Form 10-K contained the financial information regarding Nextracker's fiscal year 2024 financial results contained in the FY24 Release.

45.    On June 17, 2024, defendant Boynton spoke about Nextracker at the JPMorgan Energy, Power & Renewables Conference. As at other investor conferences, the first question after introductions posed to defendant Boynton regarded potential project delays affecting the solar tracking industry, reflecting the investor concern and interest in this topic. In response, defendant Boynton claimed that Nextracker was not suffering from the same ill effects of delay headwinds

as its peers because of its purported competitive advantages and the strong demand environment, stating in pertinent part:

> Well, I think, first of all, in utility-scale projects, timing is – these are long lead times. These are projects that, in many cases, are planned years and years in advance. And so things do happen. Projects get pushed out. Projects get pulled in. There can be short-term volatility, which is why we think about our company in terms of annual cycles, less so quarterly. We really take a long-term view.

> In terms of our execution, the culture that Dan and Howard and the team have driven is being maniacally customer-focused and maniacally engineering-focused. It's really been so apparent to me these last first two weeks just how amazing the engineering talent is. It's just world-class engineering, but also just totally customer-focused.

> And with this business we've scaled, we've done business in 40 countries. If you think about that 40 countries, US is still the lion's share of it where things are further ahead. But we've got a large pool of existing projects underway, and the demand is strong. ***And so I think to the extent that there are movements, if a customer wants to delay, we will work with that customer to delay. If a customer wants to pull it in, we'll try to pull it in***.

> ***And I think with that, we probably have been a little more resilient because of the size and scale and able to meet our customers' demands and really focus on on-time delivery. And so I think that's been helpful to us. And so there will be times, I'm sure, in the future where things push out or pull in. But I think with the tailwinds that we've seen, we've been able to see, really good year-over-year growth the last sort of five quarters-ish***.

46.    Defendants' statements referenced in ¶¶31-34 and 36-45 above were materially false and misleading when made because they misrepresented and failed to disclose the adverse facts about Nextracker's business, operations, and prospects, which were known to defendants or recklessly disregarded by them, as follows:

(a)    that the impact of project delays on Nextracker's business, financial results, and prospects was far more severe than represented to investors;

(b)    that permitting and interconnection delays had materially impaired Nextracker's ability to convert backlog into revenue at historical conversion rates;

(c)    that Nextracker had been unable to offset the negative impact from project delays through increased client demand and the purported ability to pull forward its other projects in the manner represented by defendants;

(d)     that Nextracker did not possess the competitive advantages which purportedly shielded it from industry-wide headwinds or the ability to effectively offset the adverse effects of project delays as claimed by defendants; and

(e)     that, as a result of (a)-(d) above, defendants lacked a reasonable basis for their positive statements about Nextracker's business, financial results, and prospects.

47.     Then, on August 1, 2024, Nextracker issued a release which announced results for its first fiscal quarter ended June 30, 2024 (the "1Q25 Release").  The release revealed that Nextracker's revenue had declined sequentially, from $737 million in the fourth fiscal quarter of 2024 to $720 million during the first fiscal quarter of 2025.  Similarly, Nextracker's GAAP gross profit had declined sequentially from $340 million in the fourth fiscal quarter of 2024 to $237 million during the first fiscal quarter of 2025.  Notably, the Company did not raise guidance for the first time since it became a public company, implying a slowdown in growth for the remainder of the year.

48.     In a related earnings call, defendants belatedly admitted that Nextracker was not in fact effectively offsetting the timing headwinds impacting the overall industry as previously represented.  Defendant Shugar conceded that "it is taking longer for projects to be fulfilled in real life due to" "construction permits or interconnection delays."  Defendant Wenger further admitted that only "80% of that backlog is expected to be realized over the next eight quarters."  When asked by an analyst if this was a shift from prior commentary on Nextracker's backlog conversion rate, defendant Wenger acknowledged that yes, "[i]t is a bit of a shift, honestly."  He continued:

> The project life cycles are getting a little bit longer[.]  Dan mentioned that permitting and interconnection are now the drivers for the long pole in the tent or getting projects perfected.  That has – is taking more time than it did two years ago, three years ago.  And so in addition to things like module availability, which is a secondary or maybe even a tertiary issue, project cycles are moving somewhat to the right.

49.     As a result of this news, the price of Nextracker common stock dropped from $46.83 per share when the market closed on August 1, 2024 to $39.81 per share when the market closed on August 5, 2024, a 15% decline on abnormally high volume over two trading days.

50.     On October 30, 2024, in connection with reporting its second fiscal quarter of 2025 results, Nextracker revealed that its quarterly revenue and profit continued to decline sequentially, to $636 million and $225 million, respectively.  Nextracker stock has continued its downward trajectory and fell to lows of less than $34 per share by the end of calendar 2024.

51.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of Nextracker common stock, plaintiff and other Class members (defined below) have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action on behalf a class consisting of purchasers of Nextracker common stock during the Class Period (the "Class").  Excluded from the Class are defendants and their families, the officers, directors, and affiliates of defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Nextracker common stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Nextracker or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

54.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

55.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

56.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether defendants' statements during the Class Period were materially false and misleading;

(b)    whether defendants acted with scienter in issuing materially false and misleading statements during the Class Period; and

(c)    the extent of injuries sustained by the members of the Class and the appropriate measure of damages.

57.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## ADDITIONAL SCIENTER ALLEGATIONS

58.    As alleged herein, defendants acted with scienter in that defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated during the Class Period to the investing public in the name of the Company, or in their own name, were materially false and misleading.  Defendants knowingly and substantially participated or

acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Nextracker, and their control over and/or receipt and/or modification of Nextracker's allegedly materially misleading misstatements, were active and culpable participants in the fraudulent scheme alleged herein.

59. Defendants knew and/or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants.

60. The Individual Defendants, because of their positions with Nextracker, controlled the contents of Nextracker's public statements during the Class Period. The Individual Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected. Because of their positions and access to material, non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, each of the defendants is responsible for the accuracy of Nextracker's corporate statements and is, therefore, responsible and liable for the representations contained therein.

61. The Individual Defendants were intensely focused on the timing of project completion and the conversion of Nextracker's backlog into revenue. Each of the Individual Defendants spoke on this topic during investor conference calls and held themselves out as persons

knowledgeable about the timing of Nextracker's project completion, the presence of any project delays, and the reasons and timeline to resolution of any such delays.

62.     The scienter of defendants is further underscored by the Sarbanes-Oxley Act of 2002 mandated certifications of defendants Shugar and Bennett filed during the Class Period, which acknowledged their responsibility to investors for establishing and maintaining controls to ensure that material information about Nextracker was made known to them and that the Company's disclosure-related controls were operating effectively.

**LOSS CAUSATION**

63.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Nextracker common stock and operated as a fraud or deceit on Class Period purchasers of Nextracker common stock by failing to disclose and misrepresenting the adverse facts detailed herein.  When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Nextracker common stock declined significantly as the prior artificial inflation came out of the stock's price.

64.     As a result of their purchases of Nextracker common stock during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.  Defendants' false and misleading statements had the intended effect and caused Nextracker common stock to trade at artificially inflated levels throughout the Class Period, trading as high as $62.31 per share on June 13, 2024.

65.     By concealing from investors the adverse facts detailed herein, defendants presented a misleading picture of Nextracker's business, risks, and future financial prospects. When the truth about the Company was revealed to the market, the price of Nextracker common stock fell significantly, dropping 15% over two trading days to below $40 per share by August 5,

2024, and continuing to decline thereafter, removing the inflation therefrom and causing economic loss to investors who had purchased Nextracker common stock during the Class Period.

66.    The decline in the price of Nextracker common stock after the corrective disclosures came to light was a direct result of the nature and extent of defendants' fraudulent misrepresentations being revealed to investors and the market.  The timing and magnitude of the price decline in Nextracker common stock negates any inference that the losses suffered by plaintiff and the other Class members were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to defendants' fraudulent conduct.

67.    The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the price of Nextracker common stock and the subsequent significant declines in the value of Nextracker common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

### APPLICABILITY OF THE PRESUMPTION OF RELIANCE:
### FRAUD ON THE MARKET

68.    At all relevant times, the market for Nextracker common stock was an efficient market for the following reasons, among others:

(a)    Nextracker common stock met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient, national stock market;

(b)    as a regulated issuer, Nextracker filed periodic public reports with the SEC;

(c)    Nextracker regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Nextracker was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers

of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

69. As a result of the foregoing, the market for Nextracker common stock promptly digested current information regarding Nextracker from all publicly available sources and reflected such information in the price of the stock. Under these circumstances, all purchasers of Nextracker common stock during the Class Period suffered similar injury through their purchases of Nextracker common stock at artificially inflated prices and a presumption of reliance applies.

70. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on defendants' material misstatements and/or omissions. Because this action involves defendants' failure to disclose material, adverse information regarding the Company's business operations and financial prospects – information that defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

71. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pled in this complaint. Many of the specific statements pled herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent

that the statutory safe harbor does apply to any forward-looking statements pled herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false and/or the forward-looking statement was authorized and/or approved by an executive officer of Nextracker who knew that those statements were false when made.

## COUNT I

### For Violation of §10(b) of the 1934 Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

72.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.     During the Class Period, Nextracker and the Individual Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

74.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Nextracker common stock during the Class Period.

1    75.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of

2   the market, they paid artificially inflated prices for Nextracker common stock.  Plaintiff and the

3   Class would not have purchased Nextracker common stock at the prices they paid, or at all, if they

4   had been aware that the market price had been artificially and falsely inflated by defendants'

5   misleading statements.

6

7    76.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the

8   other members of the Class suffered damages in connection with their purchases of Nextracker

9   common stock during the Class Period.

10                                  **COUNT II**

11                       **For Violation of §20(a) of the 1934 Act**
                              **Against All Defendants**
12

13   77.    Plaintiff repeats and realleges each and every allegation contained in the foregoing

14   paragraphs as if fully set forth herein.

15   78.    The Individual Defendants acted as controlling persons of Nextracker within the

16   meaning of §20(a) of the 1934 Act.  By reason of their positions with the Company, their

17   ownership of Nextracker stock, business dealings and contractual relationships with the Company,

18   and the other indicia of control detailed herein, the Individual Defendants had the power and

19   authority to cause Nextracker to engage in the wrongful conduct complained of herein.  Nextracker

20   controlled the Individual Defendants and all of its employees.  By reason of such conduct,

21   defendants are liable pursuant to §20(a) of the 1934 Act.

22

23

24

25

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Designating plaintiff as Lead Plaintiff and declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED:  December 27, 2024          ROBBINS GELLER RUDMAN
                                                        & DOWD LLP
                                                SHAWN A. WILLIAMS


                                                        s/ Shawn A. Williams
                                                _____
                                                    SHAWN A. WILLIAMS

                                                Post Montgomery Center
                                                One Montgomery Street, Suite 1800
                                                San Francisco, CA  94104
                                                Telephone:  415/288-4545
                                                shawnw@rgrdlaw.com

                                                ROBBINS GELLER RUDMAN
                                                        & DOWD LLP
                                                BRIAN E. COCHRAN
                                                655 West Broadway, Suite 1900
                                                San Diego, CA  92101-8498
                                                Telephone:  619/231-1058
                                                bcochran@rgrdlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VICKI MULTER DIAMOND
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
srudman@rgrdlaw.com
vdiamond@rgrdlaw.com

JOHNSON FISTEL, LLP
FRANK J. JOHNSON
501 West Broadway, Suite 800
San Diego, CA  92101
Telephone:  619/230-0063
frankj@johnsonfistel.com

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

Mariel Weber ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  *See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:  None.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this <u>25th</u> day of November, 2024.

DocuSigned by:

*Mariel Weber*

D99E0400D2FA4AD...

_____

Mariel Weber

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Stock**

| Date<br>Acquired | Amount of<br>Shares Acquired | Price |
|---|---|---|
| 07/18/2024 | 100 | $49.08 |

Prices listed are rounded up to two decimal places.