1  JAMES N. KRAMER (SBN 154709)
   *Email: jkramer@orrick.com*
2  ALEXANDER K. TALARIDES (SBN 268068)
   *Email: atalarides@orrick.com*
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
4  405 Howard Street
   San Francisco, CA  94105-2669
5  Telephone:    (415) 773-5700
   Facsimile:    (415) 773-5759
6
7  Attorneys for Defendants Nextracker Inc., Daniel Shugar,
   David Bennett, Howard Wenger, Charles Boynton, and
   Nicholas "Marco" Miller
8

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                          SAN JOSE DIVISION

13

14  MARIEL WEBER, Individually and on Behalf    Case No. 5:24-cv-09467-PCP
    of All Others Similarly Situated,
15                                              **DEFENDANTS' MOTION TO DISMISS**
                  Plaintiffs,
16                                              Date:       December 4, 2025
           v.                                   Time:       10:00 a.m.
17                                              Judge:      Honorable P. Casey Pitts
    NEXTRACKER INC., ET AL.,                    Ctrm:       8, 4th Floor
18
                  Defendants.

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page(s)**

NOTICE OF MOTION AND STATEMENT OF ISSUES TO BE DECIDED ............................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.      INTRODUCTION ..........................................................................1

II.     STATEMENT OF FACTS .................................................................3

        A.      Nextracker's Business, Relevant Disclosures, And Financial Performance...........3

        B.      Plaintiffs' Claims ..........................................................4

III.    LEGAL STANDARDS ....................................................................6

IV.     ARGUMENT .............................................................................6

        A.      Plaintiffs' Securities Fraud Claim Is Implausible .....................................6

        B.      Plaintiffs Fail To Allege An Actionable Statement .................................9

                1.      Mr. Shugar's Statements About Nextracker's Performance In FY 2024 ....9

                2.      Mr. Shugar's Statement About The Solar Industry's Growth ..................12

                3.      Mr. Wenger's Statement About Backlog Growth And Conversion ..........13

                4.      The 2024 Form 10-K's Risk Disclosures......................................16

                5.      Mr. Boynton's Opinion Statement About Nextracker's "Resiliency".......17

        C.      Plaintiffs Fail To Allege A "Strong Inference" Of Scienter ................................19

                1.      The Complaint Is Devoid Of Specific Facts Demonstrating Scienter .......20

                2.      Plaintiffs Make No Attempt To Plead A Plausible Theory Of Fraud........24

        D.      The Section 20(a) Claim Fails For Lack Of A Predicate Primary Violation.........25

V.      CONCLUSION.............................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re Accuray, Inc. Sec. Litig.*,
   757 F. Supp. 2d 936 (N.D. Cal. 2010) ......................................................................21

*Bailey v. Zendesk, Inc.*,
   731 F. Supp. 3d 1109 (N.D. Cal. 2024) (Pitts, J.)................................................9, 14

*Bao v. Solarcity Corp.*,
   2016 WL 4192177 (N.D. Cal. Aug. 9, 2016),
   *aff'd*, 884 F.3d 844 (9th Cir. 2018)........................................................................21

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
   2024 WL 4505465 (N.D. Cal. Oct. 15, 2024)........................................................11

*Bodri v. GoPro, Inc.*,
   252 F. Supp. 3d 912 (N.D. Cal. 2017) ..............................................................11, 22

*Brody v. Transitional Hosp. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ......................................................................... *passim*

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ................................................................................7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ....................................................................18, 22, 24

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
   2019 WL 6877195 (N.D. Cal. Dec. 17, 2019)................................................22, 23

*In re Cloudera, Inc. Sec. Litig.*,
   121 F.4th 1180 (9th Cir. 2024) ..............................................................................14

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) .................................................................19

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ................................................................................16

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ...................................................................................6

*In re DDi Corp. Sec. Litig.*,
   2005 WL 8157394 (C.D. Cal. Jan. 7, 2005) ..........................................................14

*Espy v. J2 Global, Inc.*,
   99 F.4th 527 (9th Cir. 2024) ..................................................................................22

1

## TABLE OF AUTHORITIES (CONTINUED)

2

**Cases**                                                                                    **Page(s)**

3

*In re Eventbrite, Inc. Sec. Litig.*,

4
   2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ...................................................................10, 13

5

*Fadia v. FireEye, Inc.*,
   2016 WL 6679806 (N.D. Cal. Nov. 14, 2016) ..........................................................................24

6

7

*In re Finjan Holdings, Inc. Sec. Litig.*,
   58 F.4th 1048 (9th Cir. 2023) .......................................................................................................7

8

*In re Foundry Networks, Inc. Sec. Litig.*,

9
   2003 WL 22077729 (N.D. Cal. Aug. 29, 2003) .........................................................................14

10

*Glazer Cap. Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) ...............................................................................................22, 23

11

*In re Hansen Nat. Corp. Sec. Litig.*,

12
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) .....................................................................................25

13

*In re Intel Corp. Sec. Litig.*,

14
   2023 WL 2767779 (N.D. Cal. Mar. 31, 2023),
   *aff'd*, 2024 WL 1693340 (9th Cir. Apr. 19, 2024)....................................................................15

15

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,

16
   2018 WL 4181954 (N.D. Cal. Aug. 31, 2018) ..........................................................................19

17

*Jaszczyszyn v. SunPower Corp.*,
   2025 WL 510431 (N.D. Cal. Feb. 14, 2025) .............................................................................16

18

19

*In re JDS Uniphase Corp. Sec. Litig.*,
   2003 WL 26615705 (N.D. Cal. Nov. 3, 2003) ............................................................................8

20

*Kalin v. Semper Midas Fund, Ltd.*,

21
   2023 WL 8821325 (9th Cir. Dec. 21, 2023)..............................................................................19

22

*Kipling v. Flex Ltd.*,
   2020 WL 7261314 (N.D. Cal. Dec. 10, 2020),

23
   *aff'd*, 2021 WL 6101391 (9th Cir. Dec. 21, 2021) ..................................................................21

24

*Kong v. Fluidigm Corp.*,

25
   2021 WL 3409258 (N.D. Cal. Aug. 4, 2021) ...........................................................................19

26

*Kong v. Fluidigm Corp.*,
   2023 WL 2134394 (9th Cir. Feb. 21, 2023) ..............................................................................13

27

*In re Leapfrog Enter., Inc. Sec. Litig.*,

28
   200 F. Supp. 3d 987 (N.D. Cal. 2016) .........................................................................................9

1

## TABLE OF AUTHORITIES (CONTINUED)

2

**Cases** **Page(s)**

3

*Leonard v. NetFRAME Sys., Inc.,*

4
1995 WL 798923 (N.D. Cal. Aug. 8, 1995) ...........................................................................13

5

*Lopes v. Fitbit, Inc.,*
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020),

6
*aff'd,* 848 F. App'x 278 (9th Cir. 2021)..............................................................................20

7

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.,*

8
39 F.4th 1092 (9th Cir. 2022) ....................................................................................12, 18, 19

9

*Mazzaferro v. Aruba Networks Inc.,*
2014 WL 12680773 (N.D. Cal. Aug. 1, 2014) ........................................................................13

10

*McGovney v. Aerohive Networks, Inc.,*

11
367 F. Supp. 3d 1038 (N.D. Cal. 2019) ................................................................................10

12

*Menon v. Maxeon Solar Techs., Ltd.,*

13
2025 WL 1223559 (N.D. Cal. Apr. 28, 2025) ..................................................................11, 21

14

*Monachelli v. Hortonworks, Inc.,*
225 F. Supp. 3d 1045 (N.D. Cal. 2016) ................................................................................10

15

*Nat'l Elevator Indus. Pension Fund v. Flex Ltd.,*

16
2021 WL 6101391 (9th Cir. Dec. 21, 2021) ...........................................................................23

17

*In re Nektar Therapeutics Sec. Litig.,*
34 F.4th 828 (9th Cir. 2022) ..................................................................................................21

18

19

*Nguyen v. Endologix, Inc.,*
962 F.3d 405 (9th Cir. 2020) ...............................................................................3, 8, 23, 24

20

21

*In re Nimble Storage, Inc. Sec. Litig.,*
252 F. Supp. 3d 848 (N.D. Cal. 2017),
*aff'd,* 756 F. App'x 779 (9th Cir. 2019).................................................................................8

22

23

*In re ON24, Inc. Sec. Litig.,*
2024 WL 979951 (N.D. Cal. Mar. 5, 2024).............................................................................8

24

25

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.,*
774 F.3d 598 (9th Cir. 2014) ............................................................................................6, 20

26

*In re Palo Alto Networks, Inc. Sec. Litig.,*
2025 WL 1093247 (N.D. Cal. Apr. 11, 2025) ..................................................................10, 16

27

28

# TABLE OF AUTHORITIES (CONTINUED)

**Cases**                                                                              **Page(s)**

*Patterson v. Jump Trading LLC*,
710 F. Supp. 3d 692 (N.D. Cal. 2024) (Pitts, J.),
*aff'd*, 2025 WL 215519 (9th Cir. Jan. 4, 2025)........................................................................11

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020)........................................................3, 19, 21, 25

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ........................................................................15, 22, 23

*Prodanova v. H.C. Wainwright & Co.*,
993 F.3d 1097 (9th Cir. 2021) ........................................................................20, 24, 25

*Retail Wholesale Dept. Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*,
2024 WL 3447524 (N.D. Cal. July 16, 2024) (Pitts, J.) ...............................11, 22, 23

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ........................................................................10, 11, 20

*S.E.C. v. Todd*,
642 F.3d 1207 (9th Cir. 2011) ........................................................................25

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ........................................................................10

*Sohovich v. Avalara, Inc.*,
2025 WL 957895 (9th Cir. Mar. 31, 2025) ........................................................................19

*In re Solarcity Corp. Sec. Litig.*,
274 F. Supp. 3d 972 (N.D. Cal. 2017) ........................................................................11

*Studen v. Funko, Inc.*,
2024 WL 2209686 (W.D. Wash. May 16, 2024)........................................................................19

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
551 U.S. 308 (2007)........................................................................1, 20

*Terenzini v. GoodRx Holdings, Inc.*,
2022 WL 122944 (C.D. Cal. Jan. 6, 2022) ........................................................................11, 19

*In re Twitter, Inc. Sec. Litig.*,
506 F. Supp. 3d 867 (N.D. Cal. 2020),
*aff'd*, 29 F.4th 611 (9th Cir. 2022)........................................................................11

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ........................................................................10

1

## TABLE OF AUTHORITIES (CONTINUED)

2

**Cases**                                                                                 **Page(s)**

3

*Veal v. LendingClub Corp.*,
4
    2020 WL 3128909 (N.D. Cal. June 12, 2020),
5
    *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021)...................................................17

*Veal v. LendingClub Corp.*
6
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ............................................................21, 24
7

*Waswick v. Torrid Holdings, Inc.*,
8
    2023 WL 9197563 (C.D. Cal. Dec. 1, 2023) ...................................................17, 19

9
*Welgus v. TriNet Grp., Inc.*,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017),
10
    *aff'd*, 765 F. App'x 239 (9th Cir. 2019)...................................................................20

11
*Westley v. Oclaro, Inc.*,
    2013 WL 2384244 (N.D. Cal. May 30, 2013) ..........................................................22
12

13
*Weston Family P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) .............................................................................11, 20

14
*Wochos v. Tesla, Inc.*,
15
    985 F.3d 1180 (9th Cir. 2021) ................................................................................15

16
*Yaron v. Intersect ENT, Inc.*,
    2020 WL 6750568 (N.D. Cal. June 19, 2020) ........................................................13
17

18
*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ........................................................................ *passim*

19

**Rules & Statutes**

20

Fed. R. Civ. P.
21
    Rule 8(a)..............................................................................................................1, 7
    Rule 9(b) .....................................................................................................1, 2, 6, 9
22
    Rule 12(b)(6)......................................................................................................1, 6

23
15 U.S.C.
24
    § 78j(b), Section 10(b) of Securities Exchange Act of 1934 ......................... *passim*
    § 78t(a), Section 20(a) of Securities Exchange Act of 1934.........................1, 6, 25
25
    § 78u-4(b), Private Securities Litigation Reform Act (Pleading Requirements)............ *passim*
    § 78u-5, Private Securities Litigation Reform Act (Forward-Looking Statements)...............14
26

17 C.F.R.
27
    § 240.10b-5, Securities and Exchange Commission Rule 10b-5.............................1

28

## NOTICE OF MOTION AND STATEMENT OF ISSUES TO BE DECIDED

PLEASE TAKE NOTICE that on December 4, 2025, at 10:00 a.m., before the Honorable P. Casey Pitts, Defendants Nextracker Inc. ("Nextracker" or "Company"), Daniel Shugar, David Bennett, Howard Wenger, Charles Boynton, and Nicholas "Marco" Miller will move pursuant to Fed. R. Civ. P. ("Rule(s)") 8(a), 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") to dismiss with prejudice Lead Plaintiff Ryan Barker and additional plaintiff Charles Bennett's ("Plaintiffs") Amended Class Action Complaint for Violation of the Federal Securities Laws ("Complaint" or "AC"). This Motion is based on the Memorandum of Points and Authorities below, the concurrently filed Request for Judicial Notice and Incorporation by Reference, the concurrently filed Declaration of Alexander K. Talarides and exhibits thereto ("Ex."), all pleadings and papers on file in this matter, and any other matter the Court deems appropriate.

The issues to be decided are whether Plaintiffs fail to state a claim under (i) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 (collectively, "Section 10(b)"), and (ii) Section 20(a) of the Exchange Act.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action is a prime example of the "abusive" and "frivolous" litigation that Congress aimed to eliminate with the PSLRA. *See Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 313, 320-21 (2007). Plaintiffs accuse Defendants of committing securities fraud, but their allegations do not even satisfy Rule 8(a)'s threshold requirement of pleading a plausible claim, let alone the exacting pleading requirements of the PSLRA and Rule 9(b) that govern securities fraud actions.

Nextracker is a leading solar technology platform used in power plants around the world. Its products enable solar panels to follow the sun's movement across the sky and optimize performance. Reflecting the strong demand for solar power throughout the world, the Company has achieved tremendous growth since going public in February 2023 and has built a massive backlog of orders that continues to grow and convert to revenue as customers' solar projects get underway. Despite Nextracker's success, Plaintiffs accuse Defendants of defrauding investors. Specifically, they allege that from May 14 to August 1, 2024 ("Class Period"), Defendants made statements to investors that

concealed the "fact" that project delays were materially impacting Nextracker's results due to an inability to convert material backlog into revenue. According to Plaintiffs, the "truth" was revealed on Nextracker's August 1, 2024 earnings call when Defendants observed that it was taking longer for projects to be fulfilled, and reaffirmed, rather than increase, their previously disclosed financial forecast for FY 2025. Seizing on the stock price decline that followed, Plaintiffs claim that Defendants misled investors about the impact of project delays on Nextracker's financial results.

Plaintiffs' claim, however, is irreconcilable with their own allegations and Nextracker's actual results. The Complaint on its face establishes that Defendants repeatedly acknowledged to investors that project delays were a headwind facing Nextracker, and that despite any headwinds due to project delays, Nextracker's financial results during the Class Period *were well above expectations*. Moreover, Nextracker *exceeded* the financial forecast for FY 2025 that Defendants gave to investors on the first day of the Class Period with record revenue and earnings. Given that Nextracker's performance exceeded the expectations that Defendants set and disclosed to investors at the outset of the Class Period, Plaintiffs' claim that Defendants misled investors about the impact of project delays on Nextracker's financial results is implausible on its face.

But there is more. This action is governed by the stringent pleading requirements of the PSLRA and Rule 9(b) and Plaintiffs do not come *close* to satisfying them. Plaintiffs allege *zero* specific contemporaneous facts to show that any of the challenged statements were false or misleading when made. Indeed, most of the challenged statements are not actionable as a matter of law in any event, as they are accurate statements of historical fact, forward-looking statements that are protected by the PSLRA's safe harbor for such statements, or vague, subjective statements of optimism or opinion that cannot support a securities fraud claim. Nor do Plaintiffs' allegations create a strong inference that Defendants acted with fraudulent intent, or scienter, as required by the PSLRA. The Complaint is devoid of contemporaneous facts to show that Defendants knew of or deliberately disregarded any information that was contrary to their public statements. And Plaintiffs do not even *attempt* to plead a plausible theory for why Defendants would commit securities fraud. The Complaint provides no explanation or motive whatsoever for the alleged fraud, and Defendants are not alleged to have gained *anything* from it. With no plausible theory of fraud, Plaintiffs' claim

1  "does not make a whole lot of sense," and "the PSLRA neither allows nor requires [the Court] to

2  check [its] disbelief at the door." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020).

3      At bottom, stripped of rhetoric and conclusory assertions, Plaintiffs' claim of securities fraud

4  rests on the bare fact that Nextracker suffered a (temporary[1]) stock price decline. But a "fall in

5  [Nextracker's] stock price does not alone constitute fraud." *In re Pivotal Sec. Litig.*, 2020 WL

6  4193384, at *18 (N.D. Cal. July 21, 2020). The Complaint should be dismissed with prejudice.

7  **II.    STATEMENT OF FACTS**

8      **A.    Nextracker's Business, Relevant Disclosures, And Financial Performance**

9      Nextracker, based in Fremont, California, was founded in 2013 and has been a publicly

10  traded company since February 2023. *See* AC ¶¶ 19, 30-31. The Company provides solar tracker and

11  software solutions used in utility-scale and ground-mounted distributed generation solar projects

12  around the world. *Id.* ¶ 30. Its products enable solar panels in utility-scale power plants to follow the

13  sun's movement across the sky, improving exposure to the sun and, in turn, plant performance by

14  optimizing and increasing energy production and reducing costs. *Id.* Daniel Shugar is the Company's

15  founder and Chief Executive Officer; David Bennett is its Chief Accounting Officer; Howard

16  Wenger is its President; Charles Boynton is its Chief Financial Officer; and Nicholas "Marco" Miller

17  is its Chief Operating Officer (collectively, "Individual Defendants"). *Id.* ¶¶ 20-25.

18      A key metric of Nextracker's performance is its "backlog," which the Company defines "as

19  executed contracts or purchase orders with deposits and specific bills of material for specific projects

20  with indicated start dates." *Id.* ¶ 8. Nextracker recognizes revenue as it fulfills backlog orders, so the

21  volume of its backlog provides an indication of the Company's revenue trajectory and expected

22  growth. *Id.* Nextracker's ability to convert its backlog into revenue is impacted by a variety of

23  factors, including project schedules—if a project is delayed, the Company's fulfillment of the order

24  and recognition of revenue will also be delayed. *Id.* Various requirements imposed on projects often

25  create delays. For example, utilities and grid operators require projects to conduct a series of studies

26  to establish what upgrades may be needed before a project can connect to the grid, how much those

---

27  [1] Nextracker's stock price rebounded above the pre-August 1, 2024 price of $46.83 per share on

28  January 29, 2025, and is currently trading well above that price. *See* https://finance.yahoo.com/quote/NXT/history/.

1    upgrades will likely cost, and who will pay for them. *Id.* ¶ 32. Projects that have applied to connect

2    to the grid and initiated this study process are included in "interconnection queues." *Id.* Only after

3    the studies culminate in an "interconnection agreement" can a project be built. *Id.*

4        Because project schedules can and do change frequently, Nextracker explicitly warned

5    investors prior to the Class Period that "[t]he contracts comprising [its] backlog may not result in

6    actual revenue in any particular period or at all," and that "[t]he timing of receipt of revenue, if any,

7    on projects included in backlog could change because many factors affect the scheduling of

8    projects." Ex. 1 at 49. Nextracker also explained to investors that "any delays in large projects from

9    one quarter to another may cause [its] results of operations for a particular period to fall below

10   expectations," and noted that it "ha[s] experienced seasonal and quarterly fluctuations in the past as a

11   result of," among other things, "permitting and interconnection delays." *Id.* at 42.

12       Even without these risk disclosures, investors understood that projects are frequently delayed

13   due to permitting and interconnection delays. As the Complaint admits, "project delays principally

14   from interconnection and permitting issues ... routinely interfere with the timing of utility-scale solar

15   projects," AC ¶ 33, and "investors knew generally of interconnection delays impacting utility scale

16   solar projects," *id.* ¶ 72. Moreover, as the Complaint shows, Defendants repeatedly told investors

17   that interconnection and other delays were one of the "headwinds" facing the Company. *Id.* ¶¶ 69-

18   72, 74-75, 80-82. At the same time, Defendants stated that Nextracker's "tailwinds," including the

19   volume of its backlog, "in totality," were stronger than the headwinds, and would enable the

20   Company to achieve results consistent with the annual forecasts, or guidance, they gave to investors,

21   which reflected "robust growth." *Id.* ¶¶ 67-68. As Mr. Shugar stated, while "the time required to

22   achieve an interconnection permit or authorization has increased over time," and "it's a factor,

23   definitely," Nextracker "guide[s] to an annual plan" and is "focused on annual results." *Id.* ¶ 70.

24       Nextracker's tailwinds were, in fact, stronger than its headwinds. The Company has always

25   exceeded its annual guidance and has achieved tremendous growth in revenue, earnings, and backlog

26   since becoming a publicly traded company. *See id.* ¶¶ 35-38, 84; Ex. 2 at 3, 52; Ex. 8; *infra* at 7.

27       **B.    Plaintiffs' Claims**

28       Nextracker's fiscal year for any particular year ends on March 31. AC ¶ 7 n.1. On August 1,

4

2024, Nextracker reported results for Q1 FY 2025 that were "well above expectations driven primarily by project timing," *id.* ¶ 99, and reaffirmed the revenue guidance for FY 2025 that it had given to investors on May 14, 2024, *id.* ¶¶ 84, 96. On Nextracker's earnings call that day, Messrs. Shugar and Wenger noted that "it is taking longer for projects to be fulfilled" and "project life cycles are getting a little bit longer" due to "construction permits or interconnection delays." *Id.* ¶ 97. Mr. Wenger stated, however, that 80% of Nextracker's backlog was still "expected to be realized over the next eight quarters." *Id.* Over the next two trading days, Nextracker's stock price declined. *Id.* ¶ 101. Analysts noted that Nextracker "called out project permitting and interconnection timelines as headwinds" and "[f]or the first time since going public … did not raise FY guidance," but recognized that "demand remains solid" and thus "maintain[ed] [their] Overweight rating." *Id.* ¶ 99.

Against this backdrop, Plaintiffs allege that all Defendants except Mr. Miller violated Section 10(b) by misleading investors during the Class Period "about the impact of project delays on Nextracker's financial results." *Id.* ¶ 2; *id.* ¶¶ 115-25. While the Class Period overlaps with parts of both Q1 and Q2 of Nextracker's FY 2025, the challenged statements were all made in Q1 FY 2025. As alleged in the Complaint, the challenged statements by date, medium, and speaker are as follows:

- <u>May 14, 2024, Press Release, Mr. Shugar</u>: "'[F]iscal year 2024 was a year of strong execution and significant growth for Nextracker, and we reached a record backlog of over $4 billion that more than tripled in 2 years.'… 'We've accelerated our pace of product innovation, scaled global revenue and supply chain, more than doubled our profits from the prior year, and exceeded all elements of our full year guidance.'" *Id.* ¶ 84.

- <u>May 14, 2024, Earnings Call, Mr. Shugar</u>: "'[S]trong execution by Team Nextracker enabled us to achieve record revenue, profits and backlog.'… '[S]trong sales momentum globally resulted in a new record backlog of over $4 billion.'" *Id.* ¶ 86.

- <u>May 14, 2024, Earnings Call, Mr. Shugar</u>: "Nextracker's history of 30% CAGR over the last five years reflects favorably on the EIA forecast, as does our strong backlog. On prior earnings calls, we've had questions regarding sector headwinds and interconnection permitting and other areas. We noted that these headwinds can be real for any given project or customer, but that the total universe of projects and customers has grown such that in totality the market continued strong growth." *Id.*

- <u>May 14, 2024, Earnings Call, Mr. Wenger</u>: "'[W]e're pleased with the growth of our backlog.'… '[T]ypically' backlog converts to 'revenue in two to eight quarters, and most of that in two to five quarters.'" *Id.* ¶ 88.

- <u>May 28, 2024, Form 10-K, Messrs. Shugar, Bennett, and Wenger</u>: "***Delays in construction projects and any failure to manage our inventory could have a material adverse effect on us.*** Many of our products are used in large-scale

projects, which … can be delayed and rescheduled for a number of reasons, including … interconnection delays …. These delays may result in unplanned downtime, increased costs and inefficiencies in our operations, and increased levels of excess inventory." *Id.* ¶ 90.

- May 28, 2024, Form 10-K, Messrs. Shugar, Bennett, and Wenger: "***Our results of operations may fluctuate from quarter to quarter, which could make our future performance difficult to predict and could cause our results of operations for a particular period to fall below expectations***…. Because we recognize revenue on projects as legal title to equipment is transferred from us to the customer, any delays in large projects … may cause our results of operations for a particular period to fall below expectations. We have experienced seasonal and quarterly fluctuations in the past …. [T]he true extent of these fluctuations may have been masked by our recent growth rates and consequently may not be readily apparent from our historical results of operations and may be difficult to predict…." *Id.* ¶ 92.

- June 17, 2024, Investor Conference, Mr. Boynton: "Nextracker ha[s] been resilient in the face of delays 'because of the size and scale and ab[ility] to meet our customers' demands and really focus on on-time delivery.'" *Id.* ¶ 94.

In addition to a Section 10(b) claim, Plaintiffs also allege that the Individual Defendants, including Mr. Miller, are liable under Section 20(a) as "control persons" of Nextracker. *Id.* ¶¶ 126-31.

## III.    LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must not only plead, pursuant to Rule 8(a), "sufficient factual matter, accepted as true, to state a claim to relief that is plausible," but must also satisfy the "higher, exacting pleading standards" of Rule 9(b) and the PSLRA. *Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 603-04 (9th Cir. 2014). Rule 9(b) requires Plaintiffs to plead with "particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and the PSLRA requires them to plead "with particularity all facts" showing why each challenged statement was false or misleading when made, 15 U.S.C. § 78u-4(b)(1). The PSLRA further requires Plaintiffs to plead "particulari[zed] facts giving rise to a strong inference" that the challenged statements were made with scienter. *Id.* § 78u-4(b)(2). The Court need not accept as true allegations that are conclusory or contradicted by matters subject to judicial notice or incorporated by reference into the Complaint. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## IV.    ARGUMENT

### A.    Plaintiffs' Securities Fraud Claim Is Implausible

As detailed in the sections below, Plaintiffs do not come close to satisfying the exacting pleading standards of the PSLRA and Rule 9(b), and therefore their Section 10(b) claim must be

dismissed. The Court need not even consider that issue, however, because Plaintiffs fail to satisfy Rule 8(a)'s threshold requirement of pleading a plausible claim. *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("Because Rule 8(a) requires the pleading of a plausible claim, … we hold that claims of fraud … must, in addition to pleading with particularity, also plead plausible allegations."). Specifically, Plaintiffs accuse Defendants of misleading investors during the Class Period "about the [purportedly material] impact of project delays on Nextracker's financial results," AC ¶ 2; *see also, e.g.*, *id.* ¶ 85, but Nextracker's actual financial results during the Class Period (and beyond) and Plaintiffs' own allegations make that claim implausible on its face.

On May 14, 2024, the first day of the Class Period, Defendants disclosed to investors that, "[b]ased on the current timing of projects," they expected Nextracker's (i) total revenue in FY 2025 to be between $2.8 and $2.9 billion; (ii) year-over-year revenue growth in Q1 FY 2025—the quarter in which all of the challenged statements were made—to be "in the range of 25% to 30%"; and (iii) combined year-over-year revenue growth in Q1 and Q2 FY 2025—the quarters within which the entirety of the Class Period falls—to be "approximately 14%." Ex. 9 at 9; *see also* AC ¶ 84; Ex. 5. On August 1, 2024, the last day of the Class Period, Defendants reaffirmed their full-year revenue guidance and reported that Nextracker's revenue in Q1 FY 2025 had *increased 50%* year-over-year. *See* Ex. 6 at 1-3; AC ¶ 96. As the analysts that Plaintiffs themselves rely upon noted, these results were "*well above expectations driven primarily by project timing*." AC ¶ 99 (emphasis added). On October 30, 2024, Defendants reported that Nextracker's combined revenue in Q1 and Q2 FY 2025 had *increased 29%* year-over-year. *See* Ex. 7 at 4; AC ¶ 102; *compare* Exs. 6-7 (Q1 and Q2 FY 2025 revenue of $720 million and $636 million, respectively), *with* Exs. 3-4 (Q1 and Q2 FY 2024 revenue of $479.5 million and $573 million, respectively). Ultimately, Nextracker *beat* the full-year revenue guidance that Defendants provided to investors on the first day of the Class Period with record revenue of approximately $3 billion in FY 2025, not to mention record profit. *See* Ex. 8 at 1-3.

Plaintiffs' Section 10(b) claim cannot be reconciled with these financial results, which control over Plaintiffs' conclusory allegations. *See In re Finjan Holdings, Inc. Sec. Litig.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023) ("When a general conclusion in a complaint contradicts specific facts [alleged in the complaint or] retold in a document … incorporated by reference in the complaint, or

subject to judicial notice, those specific facts are controlling."). It is simply implausible to allege, as Plaintiffs do, that project delays during the Class Period were "materially impacting Nextracker's results," AC ¶ 85, and that Defendants misled investors "about the impact of project delays on Nextracker's financial results," *id.* ¶ 2, when Nextracker achieved record growth and results that indisputedly *exceeded* the expectations that Defendants set and disclosed to investors on the first day of the Class Period, *see In re Nimble Storage, Inc. Sec. Litig.*, 252 F. Supp. 3d 848, 851-52 & n.3 (N.D. Cal. 2017) ("[P]laintiff's allegations relating to the weakening of the commercial segment are implausible given the uncontested growth in revenue"; "It is illogical for plaintiff to allege that Nimble was [impacted] ... while also reporting record revenues"), *aff'd*, 756 F. App'x 779 (9th Cir. 2019); *In re ON24, Inc. Sec. Litig.*, 2024 WL 979951, at *9 (N.D. Cal. Mar. 5, 2024) ("Plaintiff's theory of the case is … rendered implausible by the uncontroverted reports of ON24's growth"); *see also In re JDS Uniphase Corp. Sec. Litig.*, 2003 WL 26615705, at *4 (N.D. Cal. Nov. 3, 2003) (claim that "statements indicating strong demand" were misleading was "simply illogical" given company's "significantly increasing revenue" during "much of the claimed class period").

Incredibly, Plaintiffs assert that by not *raising* their full-year revenue guidance at the end of the Class Period, Defendants revealed previously concealed "revenue shortfalls caused by backlog conversion delays." AC ¶ 98. But the notion that Nextracker suffered "revenue shortfalls" is nonsensical given Nextracker's record, better-than-expected revenue results. And, in any event, the conclusory assertion that Defendants concealed such purported "revenue shortfalls" from investors is foreclosed by Plaintiffs' own allegations. Putting aside that Plaintiffs do not allege any facts to show that Nextracker suffered "revenue shortfalls caused by backlog conversion delays," the Complaint alleges that Defendants' *publicly disclosed* revenue forecast "*already incorporated* [any] material project delays" and the purported "revenue shortfalls" caused by such delays. *Id.* (emphasis added). Thus, even ignoring Nextracker's record results, Plaintiffs' own allegations establish that any purported "revenue shortfalls" caused by delays *were not concealed from investors*. Plaintiffs have simply "spun an implausibly negative story from [] incontrovertibly positive [financial results]," *ON24*, 2024 WL 979951, at *8, and the implausibility of their Section 10(b) claim, alone, is grounds for its dismissal, *see Endologix*, 962 F.3d at 415 ("'Plausibility' is a concept more commonly

1  associated with the base-level 'non-fraud' pleading standards … [b]ut [it] is no less relevant in the

2  context of [a fraud case subject to] the heightened pleading standards of Rule 9(b) or the PSLRA.").

3  **B.      Plaintiffs Fail To Allege An Actionable Statement**

4       Implausibility aside, Plaintiffs' Section 10(b) claim must also be dismissed because Plaintiffs

5  fail to allege an actionable statement. A statement is false or misleading only if it "affirmatively

6  create[s] an impression of a state of affairs that differs in a material way from the one that actually

7  exists." *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). "The purportedly

8  false or misleading statement must 'directly contradict what the defendant knew at the time.'" *Bailey*

9  *v. Zendesk, Inc.*, 731 F. Supp. 3d 1109, 1115 (N.D. Cal. 2024) (Pitts, J.). Thus, to adequately plead

10 falsity under Rule 9(b) and the PSLRA, Plaintiffs must allege particularized, "contemporaneous"

11 facts "that are necessarily inconsistent with the challenged statement[s].'" *In re Leapfrog Enter., Inc.*

12 *Sec. Litig.*, 200 F. Supp. 3d 987, 1001 (N.D. Cal. 2016). Plaintiffs have utterly failed to do so.

13      **1.      Mr. Shugar's Statements About Nextracker's Performance In FY 2024**

14      On May 14, 2024, Nextracker issued a press release announcing its record financial results in

15 Q4 and FY 2024. *See* AC ¶ 84; Ex. 5. In the release, Mr. Shugar stated:

16      Fiscal year 2024 was a year of strong execution and significant growth for
        Nextracker, and we reached a record backlog of over $4 billion that more than
17      tripled in 2 years[.]… We've accelerated our pace of product innovation, scaled
        global revenue and supply chain, more than doubled our profits from the prior
18      year, and exceeded all elements of our full year guidance.

19 Ex. 5 at 1; AC ¶ 84. On Nextracker's earnings call that day, Mr. Shugar similarly stated:

20      In Q4 [FY 2024], strong execution by Team Nextracker enabled us to achieve
        record revenue, profits and backlog…. Strong sales momentum globally resulted
21      in a new record backlog of over $4 billion.

22 Ex. 9 at 3; AC ¶ 86. Plaintiffs allege that these statements were false and misleading because

23 Defendants omitted that "lengthening" project delays at the time were "materially impacting

24 Nextracker's results due to its inability to convert material backlog into revenue." AC ¶¶ 85, 87.

25      That conclusory allegation fails four reasons. *First*, Plaintiffs do not support it with

26 particularized facts, as required by Rule 9(b) and the PSLRA.[2] The Complaint alleges zero details

27 ─────────────
   [2] As detailed below, Plaintiffs' allegations from anonymous former employees of Nextracker do not
28 provide *any* facts to show that project delays were "materially" impacting Nextracker's results when
   the challenged statements were made or at any other time during the Class Period. *See infra* at 20-24.

about any specific project delays or their purported impact on Nextracker's results at the time of Mr. Shugar's statements. There are no specific contemporaneous facts alleged to show whether and by how much any particular project delays caused Nextracker to exceed its historical rates of converting backlog to revenue; and whether and by how much any such delays actually impacted Nextracker's revenue. Without such facts, Plaintiff fail to adequately plead the alleged reason for why the challenged statements were misleading when made. *See In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 1093247, at *6 (N.D. Cal. Apr. 11, 2025) ("Nowhere do Plaintiffs allege particularized facts that would show that general demand was declining … [or] provide data about actual sales," and "[w]ithout these or similar allegations, Plaintiffs do not adequately allege falsity"); *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019) ("Plaintiffs do not provide allegations that quantify the actual staffing problems, which makes it difficult to understand the severity of the problem or whether that actually had an impact on revenue."); *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *11 (N.D. Cal. Apr. 28, 2020) ("[T]he Complaint fails to allege specific facts demonstrating how the purported cost and time translated into 'material adverse effects.'"). Simply asserting, as Plaintiffs do, that "lengthening" project delays were "materially" impacting Nextracker's results as of May 14, 2024, without alleging specific contemporaneous facts substantiating that assertion, is insufficient. *See Ronconi v. Larkin*, 253 F.3d 423, 431, 434 (9th Cir. 2001) ("Plaintiffs' complaint was required to allege specific facts that show how these 'problems' and 'difficulties' translated into decreasing revenues"; rejecting assertion that "sales growth was not accelerating" as plaintiff failed to describe sales figures); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086 (9th Cir. 2002) ("[T]he complaint gives no indication of what it means for a sales cycle to lengthen 'substantially,' or what the actual length of the cycle was at the time of the statement."); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (rejecting allegations lacking "specifics" and thus requiring the court to "speculate" as to the "severity of the problems").

*Second*, the challenged statements were about Nextracker's results in *FY 2024*, and Plaintiffs do not, and cannot, allege that those *past* results were inaccurately reported. That is dispositive because disclosures "of accurate historical data accompanied by general statements of optimism ... are not actionable," *Monachelli v. Hortonworks, Inc.*, 225 F. Supp. 3d 1045, 1055 (N.D. Cal. 2016),

"*even if* present circumstances are less rosy," *Menon v. Maxeon Solar Techs., Ltd.*, 2025 WL 1223559, at *15 (N.D. Cal. Apr. 28, 2025) (quotations omitted) (collecting multiple cases).

*Third*, the challenged statements consist of vague, generalized, subjective descriptions of Nextracker's performance in FY 2024. *See* AC ¶¶ 84, 86 ("strong execution," "significant growth," "accelerated our pace of product innovation," "scaled global revenue and supply chain," "[s]trong sales momentum"). But "an allegedly misleading statement must be 'capable of objective verification,'" *Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022), and thus "'generalized, vague and unspecific assertions,'" *Bhangal v. Hawaiian Elec. Indus., Inc.*, 2024 WL 4505465, at *12 (N.D. Cal. Oct. 15, 2024), and "'optimistic' statements involving inherently 'subjective assessments' are not actionable," *Patterson v. Jump Trading LLC*, 710 F. Supp. 3d 692, 713 (N.D. Cal. 2024) (Pitts, J.), *aff'd*, 2025 WL 215519 (9th Cir. Jan. 4, 2025); *see, e.g.*, *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 995 (N.D. Cal. 2017) (statement touting "scale and [] incredibly strong sales" was inactionable); *Terenzini v. GoodRx Holdings, Inc.*, 2022 WL 122944, at *4 (C.D. Cal. Jan. 6, 2022) (statement touting "growth [that] accelerates self-reinforcing network effects that further strengthen our competitive position" was inactionable); *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 924-25 (N.D. Cal. 2017) (statement touting "terrific momentum" was inactionable).

*Fourth*, and in any event, even accepting as true Plaintiffs' conclusory allegation that, as of May 14, 2024, project delays were materially impacting Nextracker's results, it is not in any way inconsistent with statements that were plainly about Nextracker's performance in FY 2024, and thus it does not render the challenged statements misleading. *See Ronconi*, 253 F.3d at 434; *Menon*, 2025 WL 1223559, at *18 ("[E]ven if there were problems related to two large Utility-Scale customers for 2024 Q1, [the challenged] Statement [] was about 2023 Q4; thus, a failure to reference the problems in 2024 Q1 cannot be said to be false or misleading."); *Retail Wholesale Dept. Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*, 2024 WL 3447524, at *5 (N.D. Cal. July 16, 2024) (Pitts, J.) (statements were not misleading because even if plaintiff's allegations were "true, they do not contradict the statements"). Indeed, the challenged statements do not even *mention* project timelines, and thus "neither stated nor implied anything" about the topic of the allegedly omitted information that supposedly rendered the statements misleading. *See Brody*, 280 F.3d at 1006; *In re Twitter, Inc.*

*Sec. Litig.*, 506 F. Supp. 3d 867, 884-85 (N.D. Cal. 2020) (statement was not misleading because it "d[id] not broach any of the topics in the alleged omissions"), *aff'd*, 29 F.4th 611 (9th Cir. 2022).

## 2.  Mr. Shugar's Statement About The Solar Industry's Growth

On the same earnings call discussed above, Mr. Shugar also gave a solar industry "market update." *See* Ex. 9 at 4-5. Plaintiffs challenge the following portion of his update:

> Nextracker's history of 30% CAGR over the last five years reflects favorably on the EIA forecast, as does our strong backlog.
>
> On prior earnings calls, we've had questions regarding sector headwinds and interconnection permitting and other areas. We noted that these headwinds can be real for any given project or customer, but that the total universe of projects and customers has grown such that in totality the market continued strong growth.

AC ¶ 86. According to Plaintiffs, this statement was false and misleading because it supposedly "minimize[d] the impact of industry headwinds" while omitting "the material impact of [project] delays on Nextracker's results and ability to convert backlog into revenue." *Id.* ¶ 87.

This statement is not actionable for two reasons. *First*, as discussed above, Plaintiffs do not allege any particularized, contemporaneous facts to support their conclusory allegation that as of May 14, 2024, project delays were materially impacting Nextracker's results.

*Second*, and in any event, the challenged statement was "an accurate assessment of [the solar industry's] *past growth*," *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1099 (9th Cir. 2022), and did not "affirmatively create an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]," *Brody*, 280 F.3d at 1006. The government data that Mr. Shugar cited in support of his statement but is misleadingly omitted from the Complaint— including that solar projects comprised "60% of the current queue positions" in the US and "have more total capacity than the entire existing US power generation sector," Ex. 9 at 5—and the tremendous growth that Nextracker itself reported on May 14, 2024, *see* AC ¶ 84; Ex. 5, confirm that, despite "sector headwinds," "the total universe of projects and customers" had, in fact, "grown such that in totality the market continued strong growth," AC ¶ 86. In short, the challenged statement was consistent with reality, making it inactionable as a matter of law. *See Macomb*, 39 F.4th at 1098-99 (positive statements about growth in China were inactionable, even though "growth rate was declining substantially," because at the time of the "challenged statements, the company's sales were

*still growing* in China"); *Kong v. Fluidigm Corp.*, 2023 WL 2134394, at *2 (9th Cir. Feb. 21, 2023) (positive statements "about trends in the market" were not misleading, despite allegations that defendants "conceal[ed] … that the market was deteriorating," because "Fluidigm was experiencing record growth at the time [defendants] made these comments"); *Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568, at *8 (N.D. Cal. June 19, 2020) (statements about "strong" growth were inactionable because "sales appear to have been growing, as defendants said, and Intersect met its guidance").

### 3. Mr. Wenger's Statement About Backlog Growth And Conversion

On the same earnings call discussed above, Mr. Wenger had the following exchange:

> Analyst: [I]f I could start on the backlog here, another impressive quarter. Can you give us your latest forecast for converting that into revenue? Are you seeing kind of the conversion cycle elongate? I think, you've mentioned in the past that it typically the majority converts to revenue within a 12-month window. So just trying to see if there's any changes to that pattern or kind of a shift towards projects with extended timelines?

> Mr. Wenger: Yeah. We're pleased with the growth of our backlog. Typically, it results in revenue in two to eight quarters and most of that in two to five quarters.

Ex. 9 at 10; AC ¶ 88. Plaintiffs allege that Mr. Wenger's answer was false and misleading because he "touted the growth of the Company's backlog" and "denied that" the timeline for converting backlog to revenue was lengthening, while "omitting" the "material impact of these delays on Nextracker's business and ability to convert backlog into revenue." AC ¶ 89.

Mr. Wenger's answer is not actionable for five reasons. *First*, as discussed above, Plaintiffs do not support with particularized, contemporaneous facts their conclusory allegation that as of May 14, 2024, project delays were materially impacting Nextracker's results.

*Second*, Mr. Wenger's comment, "We're pleased with the growth of our backlog," is a generalized, subjective statement of corporate optimism that is not actionable as a matter of law. *See, e.g.*, *Eventbrite*, 2020 WL 2042078, at *14 ("Statements like '[w]e are very pleased with' ... are inactionable"); *Leonard v. NetFRAME Sys., Inc.*, 1995 WL 798923, at *5 (N.D. Cal. Aug. 8, 1995) (statement "We are very pleased with [our] growth" was inactionable); *Mazzaferro v. Aruba Networks Inc.*, 2014 WL 12680773, at *1 (N.D. Cal. Aug. 1, 2014) ("[V]ague comments such as ... '[w]e are pleased with our continued momentum' ... cannot support a claim for securities fraud.").

*Third*, Mr. Wenger did not "tout[] the growth of the Company's backlog," as Plaintiffs

allege. AC ¶ 89. He merely acknowledged the analyst's comment that Nextracker had "another impressive quarter" of growth in backlog. Ex. 9 at 10. Given that Nextracker had reached "a new record backlog of over $4 billion,' a 50% increase over the prior year," AC ¶ 86, Mr. Wenger's acknowledgment of that comment with the statement, "We're pleased with the growth of our backlog," was not in any way misleading, *see In re Foundry Networks, Inc. Sec. Litig.*, 2003 WL 22077729, at *4-5 (N.D. Cal. Aug. 29, 2003) (given company's "record" revenue, allegations of weak demand did not render statement about "good overall demand" misleading); *In re DDi Corp. Sec. Litig.*, 2005 WL 8157394, at *18 (C.D. Cal. Jan. 7, 2005) (refusing to "find that it was false or misleading for DDi to assert that it experienced 'strong' demand during [a] record-setting quarter").

*Fourth*, Mr. Wenger did not "den[y]" that "any elongation of the time to convert Nextracker's backlog into revenue" was "happening," as Plaintiffs also allege. AC ¶ 88. He merely stated that "'[t]ypically,' backlog converts to 'revenue in two to eight quarters and most of that in two to five quarters.'" *Id.* Plaintiffs allege zero contemporaneous facts contradicting that statement. The only fact they cite about Nextracker's backlog-to-revenue timeframe is Mr. Wenger's disclosure *on August 1, 2024* that "80%" of backlog was "expected to be realized over the next eight quarters." *Id.* ¶ 97. But that fact is neither "*contemporaneous*" with nor "directly contra[ry]" to the challenged statement, as required "to adequately plead [its] falsity." *Zendesk*, 731 F. Supp. 3d at 1116.[3]

*Fifth*, and in any event, Mr. Wenger's "typically" statement is protected from liability by the PSLRA's safe harbor for forward-looking statements. Such statements are inactionable if they are *either* "accompanied by meaningful cautionary statements" *or* made without "actual knowledge" that they were false or misleading. 15 U.S.C. § 78u-5(c)(1). The statute defines "forward-looking statement" as (i) any statement containing a projection of financial metrics, (ii) any statement of plans and objectives for future operations, (iii) any statement of future performance, or (iv) any statement of the assumptions underlying or related to any of the foregoing. *Id.* § 78u-5(i)(1)(A)-(D).

Mr. Wenger's statement qualifies for the safe harbor. In securities fraud cases, "the context in

---

[3] "'[L]ater, sobering revelations' do not by themselves 'make [an] earlier, cheerier statement a falsehood.'" *In re Cloudera, Inc. Sec. Litig.*, 121 F.4th 1180, 1189 (9th Cir. 2024). Moreover, the word "typically" does not mean "always"—it implies that something is the case *most* of the time. Thus, lack of contemporaneity aside, Mr. Wenger's after-the-fact statement does not contradict his earlier statement, since both indicate that most backlog converts into revenue within eight quarters.

which the [challenged] statements were made is key," *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014), and "[t]he presence of a question [from an analyst] about the future enables a court to distinguish between (A) a forward-looking assumption about how future events will play out and (B) a statement ... untethered to any future objective," *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *16 (N.D. Cal. Mar. 31, 2023), *aff'd*, 2024 WL 1693340 (9th Cir. Apr. 19, 2024). Here, Mr. Wenger was responding to an analyst who asked him: "Can you give us *your latest forecast* for converting that [backlog] into revenue?" Ex. 9 at 10 (emphasis added). In context, it is thus clear that Mr. Wenger's response about how long it "typically" takes to convert backlog into revenue was a statement related to *future* expectations and performance. *See Intuitive Surgical*, 759 F.3d at 1059 (given analyst's question about "the next twelve months," defendant's statement, "I think we come up typically fairly high up on [customers' investment] priority list," was forward-looking, as it "related to future expectations and performance"). Moreover, the timeframe in which backlog is typically converted into revenue was obviously an *assumption* underlying or relating to the revenue projection for FY 2025 that Defendants gave to investors that day—and Plaintiffs admit as much. *See* AC ¶¶ 8, 12, 98. "[S]uch 'statement[s] of the assumptions underlying or relating' to a declared objective are [] deemed to be forward-looking statements." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021).

Mr. Wenger's statement was also accompanied by meaningful cautionary language. At the start of the earnings call, a Nextracker agent stated that the call would contain statements "that may be considered forward-looking" with "risks and uncertainties that may cause actual results to differ," and directed listeners to Nextracker's "most recently filed Form 10-Q" for "more information on those risks and uncertainties." Ex. 9 at 1-2; *see Intuitive Surgical*, 759 F.3d at 1059 (safe harbor applied under identical circumstances). Nextracker's most recent Form 10-Q cautioned:

> **We may not be able to convert our orders in backlog into revenue.**
>
> Backlog can be subject to large variations from quarter to quarter and comparisons of backlog from period to period are not necessarily indicative of future revenue. The contracts comprising our backlog may not result in actual revenue in any particular period or at all, and the actual revenue from such contracts may differ from our backlog estimates. The timing of receipt of revenue, if any, on projects included in backlog could change because many factors affect the scheduling of projects. Cancellation of or adjustments to contracts may occur.

> The failure to realize all amounts in our backlog could adversely affect our future revenue and gross margins. As a result, our backlog as of any particular date may not be an accurate indicator of our future financial performance.

Ex. 1 at 49. Thus, because Mr. Wenger's statement was accompanied by meaningful cautionary language, it is inactionable as a matter of law. *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). And even without any cautionary language, the statement would still be inactionable because Plaintiffs do not plead any specific contemporaneous facts "creat[ing] a strong inference that" Mr. Wenger made it with "*actual* knowledge" of its purported falsity. *Id.*; *see infra* at 20-25.

### 4.    The 2024 Form 10-K's Risk Disclosures

On May 28, 2024, Nextracker filed with the SEC its Form 10-K for FY 2024. AC ¶ 90. Plaintiffs challenge two risk disclosures contained in the 10-K: (i) a warning that solar projects "can be delayed" for "a number of reasons," including "interconnection delays," which "could have a material adverse effect" on the Company; and (ii) a warning that Nextracker's "results of operations may fluctuate from quarter to quarter" and "any delays in large projects … may cause [] results of operations for a particular period to fall below expectations." *See id.* ¶¶ 90, 92. Plaintiffs allege that both risk disclosures were "materially false" because "[a]s of May 28, 2024," "interconnection and other delays" "had already had a material impact on Nextracker's results." *Id.* ¶ 91, 93.

Putting aside that Plaintiffs do not plead any specific contemporaneous facts to support that conclusory allegation, neither of these risk disclosures is actionable for two additional reasons. *First*, "[t]he Ninth Circuit has found risk disclosures actionable only where the complaint [adequately] alleged the disclosed theoretical risks had [already] ripened into 'actual harm'" by the time of the disclosures. *Jaszczyszyn v. SunPower Corp.*, 2025 WL 510431, at *2 (N.D. Cal. Feb. 14, 2025) (citation omitted). But as discussed above, Nextracker's results in Q1 FY 2025 were "well above expectations driven primarily by project timing." AC ¶ 99. That indisputable fact forecloses the conclusory assertion that, as of May 28, 2024, interconnection and other delays had already had a material impact on Nextracker's results. In short, the risk that Plaintiffs complain about plainly had *not* materialized as of May 28, 2024, so the challenged risk disclosures are not actionable as a matter of law. *See Palo Alto Networks*, 2025 WL 1093247, at *9 ("The challenged risk disclosure[s] [] were published on September 1 and November 17 ... [but] Plaintiffs do not adequately allege that [the

product] was already failing … on those dates."); *Veal v. LendingClub Corp.*, 2020 WL 3128909, at *8 (N.D. Cal. June 12, 2020) (risk disclosures were not actionable because "the eventualities and risks [] warned of … had [not yet] materialized"), *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021).

*Second*, and in any event, "a risk disclosure is not misleading as a matter of law where it concerns a risk that is inherent in running a business, always present to some extent, and the significance of which is not a yes-or-no question of occurrence but one of degree." *Waswick v. Torrid Holdings, Inc.*, 2023 WL 9197563, at *7 (C.D. Cal. Dec. 1, 2023). The risk of project delays due to interconnection and other delays is just that kind of risk. As the Complaint admits, "project delays principally from interconnection and permitting issues ... *routinely* interfere with the timing of utility-scale solar projects," AC ¶ 33 (emphasis added), and "*investors knew*" this, *id.* ¶ 72 (emphasis added). The Complaint also shows that Defendants *repeatedly* told investors that Nextracker was not immune to interconnection and other delays.[4] Against this backdrop, Plaintiffs cannot plausibly allege that the challenged risk disclosures "affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Brody*, 280 F.3d at 1006. No reasonable investor would read the risk disclosures to imply that, as of May 28, 2024, Nextracker had *not* experienced interconnection or other delays. *See Waswick*, 2023 WL 9197563, at *7 ("A reasonable investor would not read a risk disclosure about 'disruptions' causing 'delayed shipments' to imply that Torrid … had categorically experienced neither disruptions nor delayed shipments").

### 5.    Mr. Boynton's Opinion Statement About Nextracker's "Resiliency"

At an investor conference on June 17, 2024, an analyst asked Mr. Boynton the following:

---

[4] As the Complaint alleges, on May 10, 2023, Mr. "Shugar identified delays with electrical interconnection and permitting … as one of two major headwinds" that "could delay project implementation significantly," AC ¶ 69; on May 10, 2023, Mr. Shugar also stated: "It's a fact that the time required to achieve an interconnection permit or authorization has increased over time ... [I]t's a factor, definitely," *id.* ¶ 70; on July 23, 2023, Mr. Sugar stated that "[a]ny individual project can be pushed" due to "permitting delays," *id.* ¶ 71; in October 2023, Mr. Shugar stated that "interconnection issues occasionally delayed individual Nextracker projects," *id.* ¶ 72; on January 5, 2024, Mr. Bennett stated that "industry 'headwinds [including interconnection, permitting, and panel availability] are real," and that "the Company sees more pushouts for interconnection, panels, and labor," *id.* ¶ 74; on January 31, 2024, Mr. Shugar stated that "[h]eadwinds, including interconnection backlogs, permitting delays and equipment shortages are real and can impact any specific project, EPC or developer," *id.* ¶ 75; on March 5, 2024, Mr. Shugar "acknowledge[ed] that interconnection queues are a headwind," and "that interconnection queues and permitting delays are a fact of the industry," *id.* ¶ 80; on March 18, 2024, Mr. Wenger spoke about the "headwinds that can cause a particular project ... [to] be delayed," *id.* ¶ 81; and on March 18, 2024, Mr. Wenger stated that "[t]here are a number of headwinds that can cause a particular project ... [to] be delayed," *id.* ¶ 82.

> Can we touch on just project timing? A lot of the companies in US utility-scale in particular are talking about project timing delays because of interconnections, financing, supply chain.
>
> Nextracker seems to be coming through this relatively less scathed. On the last call, you talked about project timing is within a normal range of expectations. Can you just compare and contrast? What makes Nextracker unique? What are you seeing in the field? Why do you think that project timing is less of an issue?

Ex. 10 at 2. After outlining some of Nextracker's competitive strengths, Mr. Boynton stated:

> With that, we probably have been a little more resilient because of the size and scale and ab[ility] to meet our customers' demands and really focus on on-time delivery. That's been helpful to us.

*Id*.; AC ¶ 94. According to Plaintiffs, this statement was false and misleading because Mr. Boynton "touted" that Nextracker "had been resilient in the face of delays" while knowing that "project delays as a result of interconnection queue and permitting delays were lengthening," and failed to disclose the "material impact of these delays on Nextracker's business." AC ¶¶ 94-95.

This statement, too, is not actionable for multiple reasons. *First*, and again, Plaintiffs do not allege any particularized, contemporaneous facts to support the conclusory allegation that as of June 17, 2024, project delays were materially impacting Nextracker's results.

*Second*, Mr. Boynton did not "tout[]" or categorically state that Nextracker "had been resilient in the face of delays," as Plaintiffs allege. *Id.* ¶¶ 94-95. As the exchange above shows, in response to a question about why Nextracker "seems to be coming through *relatively less* scathed" than other "companies in US utility-scale," Mr. Boynton said, "we *probably* have been *a little more* resilient[.]" Ex. 10 at 2 (emphases added). Thus, Mr. Boynton gave a qualified *opinion* ("probably") about Nextracker's resiliency *relative to other companies* ("a little more"). And Plaintiffs allege zero facts to show that, as of June 17, 2024, Nextracker had *not* "probably [] been a little more resilient" to project delays than other companies, *see Macomb*, 39 F.4th at 1099 (statements were inactionable because the "complaint contain[ed] no allegations contrary to [defendant's] assertions"), much less to show that Mr. Boynton did not honestly hold that opinion, *see City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017). Mr. Boynton also noted that "[t]hings do happen. Projects get pushed out. Projects get pulled in. There can be short-term volatility, which is why we think about our company in terms of annual cycles, less so quarterly. We really take a long-term view." Ex. 10 at 2. And later in the discussion, he stated:

"Overall, we've got a very large backlog. We've got lots of committed customers. *We can manage within the outlook that we've provided.*" *Id.* at 4 (emphasis added). Given that Nextracker did, in fact, perform "within the outlook" that Defendants provided to investors on the first day of the Class Period, Plaintiffs cannot plausibly allege that Mr. Boynton affirmatively created an impression of a state of affairs that differed materially from reality. *See Brody*, 280 F.3d at 1006; *Kong v. Fluidigm Corp.*, 2021 WL 3409258, at *8 (N.D. Cal. Aug. 4, 2021) ("These results, largely on point to projections, cut sharply against plaintiff's charge that defendants' statements were misleading."); *Pivotal*, 2020 WL 4193384, at *14 (statements were not misleading given "that Pivotal's increasing revenue and growing customer bases supported Pivotal's optimistic statements").

*Third*, and in any event, Mr. Boynton's description of Nextracker as "resilient" is a vague, subjective assessment that is not actionable as a matter of law. *See, e.g.*, *Sohovich v. Avalara, Inc.*, 2025 WL 957895, at *2 (9th Cir. Mar. 31, 2025) (statements "about [company's] 'resilience' and 'insulation from macroeconomic risk'" were inactionable); *Waswick*, 2023 WL 9197563, at *8 (statement that company "has shown 'resiliency' during covid" was inactionable); *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 2018 WL 4181954, at *5 (N.D. Cal. Aug. 31, 2018) (statement that "business remains healthy and resilient" was inactionable); *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087-88 (N.D. Cal. 2005) (statement touting "resilience in the face of mounting debt" was inactionable). His comment about Nextracker's size, scale, and ability to meet customers' demands and focus on on-time delivery is inactionable for the same reason. *See, e.g.*, *Kalin v. Semper Midas Fund, Ltd.*, 2023 WL 8821325, at *1 (9th Cir. Dec. 21, 2023) ("Whether the [company] maintained a 'constant focus' on particular topics ... is nonactionable"); *Studen v. Funko, Inc.*, 2024 WL 2209686, at *14 (W.D. Wash. May 16, 2024) (statement touting "ability to deliver" was inactionable); *Terenzini*, 2022 WL 122944, at *4 (statements touting "scale" were inactionable). And regardless, Plaintiffs allege no facts contradicting or that would call into question the general characteristics that Mr. Boynton ascribed to Nextracker. *See Macomb*, 39 F.4th at 1099.

## C.    Plaintiffs Fail To Allege A "Strong Inference" Of Scienter

Plaintiffs' Section 10(b) claim also fails because their allegations do not create a strong inference of scienter, as required by the PSLRA. Scienter means "that the defendants made false or

misleading statements either intentionally or with deliberate recklessness.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). "Deliberate recklessness … is 'an *extreme* departure from the standards of ordinary care … which presents a danger of misleading … that is either known to the defendant or is so *obvious* that the [defendant] must have been aware of it.'" *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1106 (9th Cir. 2021). To qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. Moreover, where, as here, the plaintiffs seek to hold individuals and a company liable under Section 10(b), they must "allege scienter with respect to each of the individual defendants." *Apollo*, 774 F.3d at 607. Thus, to adequately plead scienter under the PSLRA, Plaintiffs "must state specific facts" creating a strong inference that the Individual Defendants who made the challenged statements did so with, at a minimum, "a degree of recklessness that strongly suggests actual intent'" to mislead. *Prodanova*, 993 F.3d at 1108. Plaintiffs again fall far short of meeting their pleading burden.

### 1.    The Complaint Is Devoid Of Specific Facts Demonstrating Scienter

The PSLRA requires the pleading of specific "contemporaneous facts that indicate the [Individual] Defendants knew of or deliberately disregarded information that was contrary to the statements they were making." *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *22 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019); *see also Ronconi*, 253 F.3d at 432. Plaintiffs attempt to satisfy this requirement by alleging the accounts of five anonymous former Nextracker employees, or "FEs," AC ¶¶ 41-66,[5] which Plaintiffs say "confirm that Defendants tracked and had real time access to all information about projects, including and especially project delays," *id.* ¶ 40.

The Ninth Circuit has held that allegations from anonymous FEs must be supported with particularized facts establishing the FEs' personal knowledge of what they report, and the FEs'

---

[5] To the extent Plaintiffs attempt to plead scienter by citing Messrs. Shugar and Wenger's after-the-fact statements on August 1, 2024, *see* AC ¶ 97, such attempt is unavailing. As the Ninth Circuit has made clear, it is "not enough to assume or implausibly infer that defendants must have known about [] issues … based on later facts or developments," and a plaintiff cannot simply "rely on future statements to leap to that conclusion." *Twitter*, 29 F.4th at 621. "An after-the-fact statement does not constitute an admission [sufficient to plead scienter] unless it contradicts the substance of an earlier statement and essentially states 'I knew it all along.'" *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (citation omitted), *aff'd*, 848 F. App'x 278 (9th Cir. 2021). Messrs. Shugar and Wenger's after-the-fact statements do not come close to satisfying that standard.

accounts must also be particularized and indicative of scienter. *See Zucco*, 552 F.3d at 995-1000. As detailed below, the FE allegations here suffer from three overarching defects. *First*, and foremost, the FEs do "not identify any specific information that was either received or communicated by any Individual Defendant that would contradict any [of their] public statement[s]." *Veal v. LendingClub Corp.* 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019). The FE allegations thus do not create any inference of scienter or even show the falsity of any challenged statement. *Second*, anonymous sources must "ha[ve] reliable personal knowledge of the defendants' mental state"—"generalized claims about corporate knowledge are insufficient." *Zucco*, 552 F.3d at 998. But four of the five FEs "lacked sufficient contact with [the] Individual Defendants [who made the challenged statements] to have personal knowledge of their state of mind." *Bao v. Solarcity Corp.*, 2016 WL 4192177, at *9 (N.D. Cal. Aug. 9, 2016), *aff'd*, 884 F.3d 844 (9th Cir. 2018). While one FE allegedly interacted with Messrs. Shugar and Bennett, that FE left Nextracker *before* the Class Period, so it is "difficult to surmise how the opinions and observations of th[at] [FE] could support a reasonable inference about what th[o]se [I]ndividual Defendants knew or did not know at the time each of the challenged statements was made." *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 949 (N.D. Cal. 2010). *Third*, whether anonymous sources can be credited depends on "'the level of detail provided by the [sources]." *Zucco*, 552 F.3d at 995. But the FEs do not provide "the 'specificity in time, context, and details' that courts have frequently required as indicia of reliability." *Kipling v. Flex Ltd.*, 2020 WL 7261314, at *11 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2021 WL 6101391 (9th Cir. Dec. 21, 2021).

FE1:  A project manager from February 2023 to November 2024, FE1 vaguely asserts that project delays were "common." *See* AC ¶¶ 41, 43. Putting aside that this assertion does not contradict any of the challenged statements, such "conclusory adjectives do not meet the PSLRA's heightened pleading requirements." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022); *see also Pivotal*, 2020 WL 4193384, at *11 (FE statements about "lengthening sales cycles" were insufficient "vague assertions"); *Menon*, 2025 WL 1223559, at *12 (FE statement about "'a great deal of loss' of dealers" was too "vague" as "[n]o information is provided about the number of dealers"). FE1 also describes how projects were tracked via a "Project Dashboard," *see* AC ¶¶ 42, 44-45, and asserts that Mr. Shugar "had direct access to" it and "was a hands-on CEO," *id.* ¶ 48. But

the Complaint "does not allege that [Mr. Shugar] personally accessed the [Dashboard]," *City of Dearborn*, 856 F.3d at 620, and, in any event, "access to such data alone is insufficient to establish scienter," *Stitch Fix*, 2024 WL 3447524, at *7; *Intuitive Surgical*, 759 F.3d at 1063, and "'[g]eneral allegations of defendants' 'hands-on' management style ... are [likewise] insufficient,'" *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 746 (9th Cir. 2008); *see also Espy v. J2 Global, Inc.*, 99 F.4th 527, 539 (9th Cir. 2024) ("[A]llegations of 'corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter.'"); *Bodri*, 252 F. Supp. 3d at 932 ("[P]articularity requires pleading the who, what, where, when, and how regarding each Defendant's access to the relevant information"). The Complaint also alleges no facts to show that FE1 has personal knowledge to support those conclusory assertions. *See Westley v. Oclaro, Inc.*, 2013 WL 2384244, at *10 (N.D. Cal. May 30, 2013) ("[A]lthough Plaintiffs could have developed a theory of 'hands-on' management through their [FEs], neither witness has provided sufficient information to support that theory."). Instead, it only alleges that FE1 reported to a non-defendant, who in turn interacted with other non-defendants and Mr. Miller, who is not alleged to have made any statement or violated Section 10(b). *See* AC ¶¶ 41, 46-47. Thus, FE1 "lack[s] first hand knowledge regarding what the [I]ndividual [D]efendants knew." *Intuitive Surgical*, 759 F.3d at 1063.

FE2: A project manager, FE2 began working at Nextracker in July 2024, *i.e.*, *after* the challenged statements were made. *See* AC ¶ 49; *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *14 (N.D. Cal. Dec. 17, 2019) ("[FE] accounts must be 'contemporaneous' with the alleged misstatements."). Not surprisingly, FE2 does not even *mention* the Individual Defendants who made the challenged statements, much less make any assertion about what they knew. *See* AC ¶¶ 49-55. And, in any event, the only detail based on personal knowledge that FE2 provides about project delays does not in any way contradict the challenged statements. *Id.* ¶ 50 (alleging that of the eleven projects overseen by FE2, "three to four experienced delays").

FE3: A project manager from March 2016 to November 2024, FE3 asserts that "approximately 20% of projects faced delays Company-wide." *Id.* ¶¶ 56-57. But FE3 does not provide any details regarding such delays or their impact, or any "particularity as to time," which is important given that FE3 was at Nextracker for over *eight years before* the challenged statements

1   were made. *See Oracle*, 2019 WL 6877195, at *14 ("[FE] reports must be specific in their time

2   references"). Moreover, even if 20% of projects faced delays Company-wide during the entirety of

3   FE3's employment, that does not contradict any of the challenged statements. *See Nat'l Elevator*

4   *Indus. Pension Fund v. Flex Ltd.*, 2021 WL 6101391, at *1 (9th Cir. Dec. 21, 2021) (FE allegations

5   were insufficient as they merely "describe[d] operational difficulties without directly contradicting

6   Flex's statements"). And FE3 does not offer any facts to show what the Individual Defendants knew

7   when they made any of the statements. While FE3 states that Mr. "Boynton and other [unnamed]

8   senior Nextracker executives closely and constantly tracked the Company's financial results" and

9   "the impact of project delays," AC ¶ 57, the Complaint pleads no facts to show that FE3 has personal

10  knowledge to support that conclusory assertion, *see Zucco*, 552 F.3d at 998 (FEs that "report only

11  conclusory assertions" about defendants are insufficient), much less detail the actual contents of any

12  particular report, *see Stitch Fix*, 2024 WL 3447524, at *7 ("[P]laintiffs fail to identify specific

13  reports ... that defendants received or the specific contents of such reports."); *Intuitive Surgical*, 759

14  F.3d at 1063 (FE allegations were insufficient as they did not "detail the actual contents of the

15  reports the executives purportedly referenced or had access to"); *Endologix*, 962 F.3d at 417

16  (declining to credit FE allegations about "incident reports" where complaint "d[id] not plead any

17  details about these reports"). Instead, it only alleges that FE3 reported to a non-defendant, who in

18  turn interacted with other non-defendants and Mr. Miller, who, again, is not alleged to have made

19  any statement or violated Section 10(b). *See* AC ¶¶ 56-58. Thus, FE3, too, "lack[s] first hand

20  knowledge regarding what the [I]ndividual [D]efendants knew." *Intuitive Surgical*, 759 F.3d at 1063.

21      FE4:  A director of finance, FE4 left Nextracker in April 2024, *i.e.*, *before* the challenged

22  statements were made. *See* AC ¶ 59; *Oracle*, 2019 WL 6877195, at *14 ("[S]tatements from [FEs]

23  who left [the company] before the alleged misstatements were made cannot substitute for reports

24  during the Class Period"). And while the Complaint alleges that FE4 "participate[d] in weekly

25  leadership meetings with [Messrs.] Shugar and Bennett along with between 20 and 30 employees,"

26  and "reported directly to" Mr. Bennett, *see* AC ¶¶ 59, 63, such "'[g]eneral allegations of defendants'

27  ... interaction with other officers and employees [and] their attendance at meetings ... are

28  insufficient,'" *Glazer*, 549 F.3d at 746. "At a minimum, [FE4] needed to have provided information

about precisely what was said by the parties in these meetings, which facts [Messrs. Shugar or Bennett] were exposed to, and why this exposure supports an inference of scienter." *Fadia v. FireEye, Inc.*, 2016 WL 6679806, at \*16 (N.D. Cal. Nov. 14, 2016). FE4 does no such thing and does not even identify any information that contradicts the challenged statements, much less assert that any such information was ever conveyed to Messrs. Shugar or Bennett. *See City of Dearborn*, 856 F.3d at 620 (FE allegations were insufficient where there was no allegation that FEs disclosed contradictory information to defendants). Instead, FE4 describes generally Nextracker's financial and project monitoring processes, *see* AC ¶¶ 60-61, 63, and asserts, without any detail, that "permitting delays, solar panel supply challenges, and increasingly long wait times for interconnection to the electrical grids were common causes for project delays," and that unnamed "senior managers constantly discussed project delays and their causes," *id.* ¶ 62; *see Veal*, 423 F. Supp. 3d at 814 (scienter cannot be pled "by lumping 'management' and 'executives' together").

FE5: A project manager, FE5 left Nextracker in January 2024, *i.e.*, *before* the challenged statements were made. *See* AC ¶ 64. FE5 also does not mention any of the Individual Defendants or identify any information that contradicts any of the challenged statements, and instead merely describes generally how project managers tracked the progress of projects. *Id.* ¶¶ 64-66.

In sum, Plaintiffs' FE allegations add *nothing* to the scienter (or even falsity) analysis, and the Complaint is utterly devoid of specific contemporaneous facts that might demonstrate scienter.

## 2.    Plaintiffs Make No Attempt To Plead A Plausible Theory Of Fraud

Under the PSLRA, if the facts alleged, considered holistically, do not create an inference of scienter that is "strong," "cogent," and "at least as compelling as" the opposing inference of nonfraudulent intent, a Section 10(b) claim must be dismissed. *Zucco*, 552 F.3d at 991. The Ninth Circuit has made clear that "if the complaint fails to plead a plausible motive for the allegedly fraudulent action, the plaintiff will face a substantial hurdle in establishing scienter." *Prodanova*, 993 F.3d at 1103. And because "the PSLRA neither allows nor requires [a court] to check [its] disbelief at the door," if the plaintiff's claim lacks "plausibility" or "does not make a whole lot of sense," it necessarily does not give rise to a strong inference of scienter. *Endologix*, 962 F.3d at 415.

That is the case here. In addition to being devoid of "compelling" and "particularized facts"

demonstrating scienter, the Complaint does not allege *any* motive or theory of fraud, much less a plausible one. *See Prodanova*, 993 F.3d at 1108 ("Only where a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness will we overlook the failure to allege a plausible motive."). It provides no explanation whatsoever for the alleged fraud, and Defendants are not alleged to have gained *anything* from it. *See Pivotal*, 2020 WL 4193384, at *18 ("[T]he Ninth Circuit has held that an absence of malicious gains does indeed 'detract from a scienter finding.'"). With no plausible theory of fraud, Plaintiffs' claim is "divorced from common experience," *Prodanova*, 993 F.3d at 1107, as there is simply no logical reason why Defendants would, as Plaintiffs claim, mislead investors "about the impact of project delays on Nextracker's financial results," AC ¶ 2, only to voluntarily come clean just a few months later by, according to Plaintiffs, "admit[ing] that" project delays "had impacted Nextracker," *id.* ¶ 12.

In truth, Plaintiffs *cannot* plead a plausible theory of fraud because their Section 10(b) claim is nonsensical. As discussed above, it is implausible for Plaintiffs to allege that Defendants misled investors about the impact of project delays on Nextracker's financial results when the Company's results indisputably *exceeded* the expectations that Defendants set and disclosed to investors at the outset of the Class Period. Because Defendants' statements to investors during the Class Period were not in any way inconsistent with Nextracker's performance, Plaintiffs' claim simply makes no sense, and the innocent inference—the absence of scienter—is by *far* the most compelling inference here.

### D.    The Section 20(a) Claim Fails For Lack Of A Predicate Primary Violation

Because Plaintiffs' Section 10(b) claim fails, their Section 20(a) claim, too, fails. *See Zucco*, 552 F.3d at 990. It also fails as to Mr. Miller because Plaintiffs allege no facts to show that he is a "control person" of Nextracker and instead rely on generic allegations based on his officer position at the Company. *See* AC ¶¶ 127-29. Because being a "high-ranking officer … does not create a presumption that [Mr. Miller] is a 'controlling person,'" *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011), such "boilerplate" allegations are "insufficient to state a claim for control person liability," *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007).

### V.    CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.

DEFENDANTS' MOTION TO DISMISS
CASE NO. 5:24-CV-09467-PCP

1    Dated:  August 8, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3                                                        */s/James N. Kramer*
                                                        JAMES N. KRAMER