JAMES N. KRAMER (SBN 154709)
*Email: jkramer@orrick.com*
ALEXANDER K. TALARIDES (SBN 268068)
*Email: atalarides@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:     (415) 773-5759

Attorneys for Defendants Nextracker Inc.,
Daniel Shugar, David Bennett, Howard Wenger,
Charles Boynton, and Nicholas "Marco" Miller

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIEL WEBER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEXTRACKER INC., ET AL.,<br><br>Defendants. | Case No. 5:24-cv-09467-PCP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Date:     December 4, 2025<br>Time:     10:00 a.m.<br>Judge:    Honorable P. Casey Pitts<br>Ctrm:     8, 4th Floor |

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT ........................................................................................................2

      A.    Plaintiffs Do Not Satisfy Rule 8(a)'s Requirement Of Pleading A Plausible Claim..................................................................................................2

      B.    Plaintiffs Fail To Plead The Premise Of Their Claim With Particularity................3

      C.    The Challenged Statements Are Not Actionable For Additional Reasons..............5

      D.    Plaintiffs Fail To Allege A "Strong Inference" Of Scienter ..................................12

III.  CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) .........................................................................................10, 15

*In re Atossa Genetics Inc. Sec. Litig.*
    868 F.3d 784 (9th Cir. 2017) ...............................................................................................7

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ...............................................................................................7

*Brody v. Transitional Hosp. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ...............................................................................................6

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .............................................................................................2

*In re Cloudera, Inc. Sec. Litig.*,
    121 F.4th 1180 (9th Cir. 2024) ...........................................................................................5

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) .............................................................................15

*Das v. Unity Software, Inc.*,
    2024 WL 1141733 (N.D. Cal. Mar. 15, 2024)......................................................................5

*Dolly v. GitLab Inc.*,
    2025 WL 2372965 (N.D. Cal. Aug. 14, 2025) ...............................................................4, 15

*Espy v. J2 Global, Inc.*,
    99 F.4th 527 (9th Cir. 2024) ..............................................................................................14

*In re Facebook, Inc. Sec. Litig.*,
    87 F.4th 934 (9th Cir. 2023) ..............................................................................................10

*In re Fastly, Inc. Sec. Litig.*
    2025 WL 2721693 (N.D. Cal. Sept. 24, 2025) ....................................................................7

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) .................................................................................8, 10, 13

*Grae v. Corr. Corp. of Am.*,
    2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017)................................................................15

*Institutional Inv. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)............................................................................................1, 13

**TABLE OF AUTHORITIES (CONTINUED)**

**Cases**                                                                                                   **Page(s)**

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ...................................................................................................7

*Kong v. Fluidigm Corp.*,
    2023 WL 2134394 (9th Cir. Feb. 21, 2023) ............................................................................8

*Leventhal v. Chegg, Inc.*,
    721 F. Supp. 3d 1003 (N.D. Cal. 2024) ..................................................................................8

*Macomb Cnty. Ret. Sys. v. Align Tech., Inc.*,
    39 F.4th 1092 (9th Cir. 2022) ...........................................................................................8, 11

*Menon v. Maxeon Solar Techs., Ltd.*,
    2025 WL 1223559 (N.D. Cal. Apr. 28, 2025) ........................................................................6

*Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*,
    2021 WL 6101391 (9th Cir. Dec. 21, 2021) ...........................................................................4

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022) ...................................................................................................4

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) .......................................................................................2, 12, 14

*In re Nimble Storage, Inc. Sec. Litig.*,
    252 F. Supp. 3d 848 (N.D. Cal. 2017), *aff'd*, 756 F. App'x 779 (9th Cir. 2019) .....................2

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
    780 F. App'x 480 (9th Cir. 2019) ...........................................................................................7

*In re ON24, Inc. Sec. Litig.*,
    2024 WL 979951 (N.D. Cal. Mar. 5, 2024)............................................................................3

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ..........................................................................................14, 15

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021) ...............................................................................................12

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ....................................................................................8, 13, 15

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) .................................................................................................13

**TABLE OF AUTHORITIES (CONTINUED)**

**Cases**                                                                                                                    **Page(s)**

*Retail Wholesale Dept. Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*,
    790 F. Supp. 3d 763 (N.D. Cal. 2025) ....................................................................................7

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) .................................................................................................7

*Ross v. Career Educ. Corp.*,
    2012 WL 5363431 (N.D. Ill. Oct. 30, 2012)........................................................................15

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ...............................................................................................15

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) .................................................................................................7

*Sinnathurai v. Novavax, Inc.*,
    645 F. Supp. 3d 495 (D. Md. 2022) .....................................................................................15

*Sneed v. Talphera, Inc.*,
    147 F.4th 1123 (9th Cir. 2025) ......................................................................................14, 15

*In re Splunk Inc. Sec. Litig.*,
    592 F. Supp. 3d 919 (N.D. Cal. 2022) ..................................................................................8

*Tyler v. Travelers Com. Ins. Co.*,
    499 F. Supp. 3d 693 (N.D. Cal. 2020) ....................................................................3, 6, 9, 12

*In re Vaxart, Inc. Sec. Litig.*,
    576 F. Supp. 3d 663 (N.D. Cal. 2021) ..................................................................................9

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ................................................................................13

*Weston v. DocuSign, Inc.*,
    669 F. Supp. 3d 849 (N.D. Cal. 2023) ..................................................................................8

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) .............................................................................................11

*Yaron v. Intersect ENT, Inc.*,
    2020 WL 6750568 (N.D. Cal. June 19, 2020)........................................................................8

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...............................................................................................14

**TABLE OF AUTHORITIES (CONTINUED)**

**Rules and Statutes** **Page(s)**

Fed. R. Civ. P.
    Rule 8(a)............................................................................................................2, 3
    Rule 9(b) ....................................................................................... *passim*

15 U.S.C.
    § 78u-4(b), Private Securities Litigation Reform Act (Pleading Requirements)............. *passim*
    § 78u-5, Private Securities Litigation Reform Act (Forward-Looking Statements)..................9

## I.    **<u>INTRODUCTION</u>**

Plaintiffs offer no viable opposition to Defendants' motion to dismiss ("Motion" or "Mot."). The premise of Plaintiffs' securities fraud claim is that project delays were materially impacting Nextracker's revenue during the Class Period and that Defendants defrauded investors about that purported "fact." As the Motion shows, that premise is irreconcilable with Nextracker's undisputed revenue results during the Class Period and beyond, which exceeded the expectations and guidance that Defendants set and disclosed to investors on the first day of the Class Period. In short, Plaintiffs' theory of the case is rendered implausible by Nextracker's incontrovertible record financial results.

Plaintiffs' opposition ("Opposition" or "Opp.") ignores this dispositive point entirely. Instead, it makes various assertions divorced from the content and context of the seven challenged statements, and grossly misrepresents case law. For example, the Introduction to the Opposition asserts that *Institutional Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009) is "on all fours with" this case. Opp. at 1. Not so. The company in *Avaya* reported "horrid" financial results and "announced that it would be unable to meet its previously stated" forecasts just one month after the defendants had reaffirmed those forecasts and "flatly" denied the existence of the circumstances that caused the company's "disappointing" results. *See* 564 F.3d at 247-48, 269-72. In sharp contrast, Defendants here never disavowed any previously announced forecasts, nor did they ever deny that Nextracker experienced project delays—they repeatedly acknowledged delays as a "headwind"— and the Company *exceeded all* forecasts given to investors with record revenue and earnings.

The Opposition's egregiously false comparison of *Avaya* to this case is emblematic of its pattern of making unsupported assertions with citations to clearly inapposite authorities. Plaintiffs do not cite a single case sustaining a Section 10(b) complaint where, as here, the company's performance exceeded the expectations and guidance that the defendants set and disclosed to investors at the start of the alleged class period. That is not surprising. It is simply implausible and illogical to allege, as Plaintiffs do, that project delays were "materially impacting Nextracker's results" during the Class Period, AC ¶ 85, and that Defendants misled investors "about the impact of project delays on Nextracker's financial results," *id.* ¶ 2, when the Company undisputedly achieved record results that, according to the analysts that Plaintiffs themselves rely on, were "well above

expectations," *id.* ¶ 99. The Complaint should be dismissed with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs Do Not Satisfy Rule 8(a)'s Requirement Of Pleading A Plausible Claim

As the Ninth Circuit has recognized, while "[p]lausibility is a concept more commonly associated with the base-level 'non-fraud' pleading standards … [it] is no less relevant in the context" of a securities fraud action governed by the "heightened pleading standards of Rule 9(b) or the PSLRA." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020). Indeed, "[b]ecause Rule 8(a) requires the pleading of a plausible claim," fraud claims "must, in addition to pleading with particularity, also plead plausible allegations." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Here, as the Motion demonstrates, Plaintiffs' Section 10(b) claim must be dismissed because they fail to satisfy Rule 8(a)'s requirement of pleading a plausible claim. *See* Mot. at 7-8. The Opposition fails to even *acknowledge* this argument, let alone attempt to rebut it.

The premise of Plaintiffs' claim is that project delays were "materially impacting Nextracker's results" during the Class Period "due to [the Company's] inability to convert material backlog into revenue," and that Defendants misled investors during the Class Period by concealing that purported "fact." *See* AC ¶¶ 2, 85, 87, 89, 91, 93, 95; *see also, e.g.*, Opp. at 6, 12. But as the Motion shows, and as the chart below highlights, that claim is not plausible because Nextracker undisputedly achieved *record* revenue during the Class Period and beyond, and *exceeded all* revenue guidance and expectations that Defendants disclosed to investors on the first day of the Class Period:

| Period | Disclosed Guidance and Expectations | Undisputed Results |
|---|---|---|
| Full FY 2025 | $2.8 to $2.9 billion total revenue | ~$3 billion total revenue |
| Q1 FY 2025 | 25% to 30% year-over-year revenue growth | 50% year-over-year growth |
| Q1 & Q2 FY 2025 | ~14% year-over-year revenue growth | 29% year-over-year growth |

*See* Mot. 7; *see also* AC ¶ 99 (stating that revenue in Q1 FY 2025 was "well above expectations").

"Plaintiff[s] simply cannot reconcile [their] allegations with the undisputed fact that [Nextracker] consistently exceeded its revenue projections … during the Class Period [and beyond] … while also reporting record revenues." *In re Nimble Storage, Inc. Sec. Litig.*, 252 F. Supp. 3d 848, 851 (N.D. Cal. 2017), *aff'd*, 756 F. App'x 779 (9th Cir. 2019). Rather, Plaintiffs have "spun an implausibly negative story from [] incontrovertibly positive [financial results]." *In re ON24, Inc.*

*Sec. Litig.*, 2024 WL 979951, at *8 (N.D. Cal. Mar. 5, 2024). What's more, the Complaint alleges that the revenue forecasts that Defendants gave to investors at the outset of the Class Period and that Nextracker exceeded "already incorporated [any] material project delays" and any purported "revenue shortfalls" caused by such delays, AC ¶ 98—which, *by definition*, means that Defendants did *not* conceal from investors any impact, material or otherwise, that any project delays may have had on Nextracker's revenue during the Class Period (or at any other time), *see* Mot. at 8.

In short, Plaintiffs' "theory of the case is … rendered implausible by the uncontroverted reports of [Nextracker's] growth" and their own allegations. *ON24*, 2024 WL 979951, at *9. And the Opposition's failure to address the Motion's demonstration that Plaintiffs' Section 10(b) claim does not satisfy Rule 8(a)'s "plausibility" requirement is a concession that the claim fails on that basis alone. *See Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020) ("Plaintiff concedes these arguments by failing to address them in her opposition." (collecting cases)).

### B.    Plaintiffs Fail To Plead The Premise Of Their Claim With Particularity

Even if Nextracker's undisputed revenue results and Plaintiffs' own allegations did not refute Plaintiffs' Section 10(b) claim and render it implausible—and they do—the claim still fails because Plaintiffs do not adequately plead the claim's premise that project delays "were materially impairing the [Company's] backlog conversion and revenues throughout the Class Period." Opp. at 6. That premise serves as the "reason" why each of the seven challenged statements alleged in the Complaint were purportedly false or misleading when made. *See* AC ¶¶ 85, 87, 89, 91, 93, 95. The PSLRA and Rule 9(b) require Plaintiffs to plead *particularized* and *contemporaneous* facts to support that premise as to each of the challenged statements, but as the Motion explains, the Complaint is devoid of such facts. *See* Mot. at 6, 9-10, 12-13, 16, 18.

In response, the Opposition repeatedly cites the Complaint's FE allegations as being sufficient to satisfy Plaintiffs' pleading burden. *See* Opp. at 4-5, 9-10, 15, 18-19, 21-23. The FE allegations, however, are insufficient to show that project delays were "materially impairing" Nextracker's revenue "throughout the Class Period," *id.* at 6, because the allegations say *nothing* about the impact of delays on Nextracker's revenue at any point in time. At most, the FE allegations establish that "senior managers" "tracked and had real time access to all information about projects,

including … project delays." AC ¶ 40; *see id.* ¶¶ 41-66. Even the Opposition, which overstates the FE allegations, only argues that the allegations show that "delays were routinely identified, tracked, and escalated through [Nextracker's] reporting channels … [to] the Individual Defendants." Opp. at 5; *see also id.* at 9. But the fact that the Individual Defendants knew that Nextracker experienced project delays does not contradict any of the challenged statements, and Defendants never represented otherwise. *See* Mot. at 5-6; *Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*, 2021 WL 6101391, at *1 (9th Cir. Dec. 21, 2021) ("[T]he confidential witness statements that [plaintiff] relies on do not demonstrate that Flex's public statements were false. On the contrary, the confidential witness statements describe operational difficulties without directly contradicting Flex's statements about profitability or successes"); *Dolly v. GitLab Inc.*, 2025 WL 2372965, at *10-13 (N.D. Cal. Aug. 14, 2025) (challenged statements were not adequately pled to be false or misleading because "[n]one of the allegations in the complaint," which were largely based on the alleged "accounts" of multiple FEs, "contradict[ed] Defendants' statements"). Indeed, as the Complaint admits: (i) "investors *knew*" that "project delays principally from interconnection and permitting issues ... *routinely* interfere with the timing of utility-scale solar projects," *see* AC ¶¶ 33, 72 (emphases added); and (ii) Defendants *repeatedly* told investors that Nextracker was not immune to project delays and acknowledged that such delays had been lengthening, *see* Mot. at 4, 17 & n.4.

As the Motion explains, the Complaint alleges zero specific contemporaneous facts to show whether and by how much any delays caused Nextracker to exceed its historical rates of converting backlog to revenue, and whether and by how much any such delays impacted Nextracker's revenue at the time the challenged statements were made. *Id.* at 9-10. Without such facts, Plaintiffs fail to adequately plead under Rule 9(b) and the PSLRA the alleged reason why any of the seven challenged statements were misleading when made, and their Section 10(b) claim must be dismissed on that basis as well. *Id.* at 10 (citing multiple on point cases from the Ninth Circuit regarding this pleading failure); *see also In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837-38 (9th Cir. 2022) (falsity of challenged statements was not adequately pled "because the complaint has failed to plead sufficient facts to provide context that would allow us to assess the alleged falsity of [defendant's] statements"; "conclusory adjectives do not meet the PSLRA's heightened pleading requirements").

DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 5:24-cv-09467-PCP

Plaintiffs attempt to distinguish a few of Defendants' cited cases by misrepresenting their facts and the allegations in this case. *See* Opp. at 10 (citing *In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 1093247 (N.D. Cal. Apr. 11, 2025); *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038 (N.D. Cal. 2019); *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078 (N.D. Cal. Apr. 28, 2020)). Plaintiffs' misguided effort only underscores the inadequacy of their pleading, as the allegations in those cases were far more detailed than those here. More importantly, Plaintiffs miss the central point of those cases and others like them cited in the Motion, which is that Plaintiffs are required to plead specific contemporaneous facts demonstrating why the challenged statements were misleading when made—simply asserting the "reason" in conclusory fashion, as Plaintiffs do, is insufficient. *See also In re Cloudera, Inc. Sec. Litig.*, 121 F.4th 1180, 1189 (9th Cir. 2024) ("[A]ssertions [that] are 'unsupported by details' [] cannot satisfy the particularity requirement of Rule 9(b)."); *Das v. Unity Software, Inc.*, 2024 WL 1141733, at *8 (N.D. Cal. Mar. 15, 2024) ("[T]he PSLRA necessitat[es] 'specific' and 'contemporaneous' facts indicating when and how Audience Pinpointer experienced the issues which [] Plaintiffs allege made Defendants' statements false."). That, alone, makes the cases that Plaintiffs cite throughout their Opposition inapposite.

### C.     The Challenged Statements Are Not Actionable For Additional Reasons

In addition to demonstrating that Plaintiffs' Section 10(b) claim is rendered implausible by Nextracker's undisputed financial results and Plaintiffs' own allegations, and that, in any event, Plaintiffs fail to adequately plead under Rule 9(b) and the PSLRA the premise of their claim, the Motion details other, independent reasons why the challenged statements are not actionable. The Opposition either ignores these points or responds with arguments that are patently without merit.

**Mr. Shugar's May 14, 2024 statements about Nextracker's results in FY 2024 (Mot. at 9-12, discussing the statement challenged in AC ¶ 84 and one of the two statements challenged in AC ¶ 86):** Plaintiffs do not address two of the additional bases that the Motion sets forth as to why these two challenged statements are not actionable. *See* Opp. at 12-14 (section addressing these statements). Specifically, they do not acknowledge or dispute that these statements are too generalized to be actionable under the securities laws. *See* Mot. at 11. Nor do they acknowledge or dispute that, even accepting as true the assertion that, as of May 14, 2024, project delays were

materially impacting Nextracker's results, it is not inconsistent with—and so does not render misleading—Mr. Shugar's generalized statements about Nextracker's results in FY 2024, especially since the statements made no reference to project timelines or delays (the topic of the alleged omission). *Id.* at 11-12. Plaintiffs thus concede these points. *See Tyler*, 499 F. Supp. 3d at 701.

Rather than address these points, Plaintiffs instead argue that because Mr. Shugar "highlight[ed] NXT's backlog" growth in FY 2024, he "had a duty to disclose that ... delays were materially impairing the conversion of backlog into revenue." *See* Opp. at 12-14. But even if Plaintiffs had adequately pled the premise that, as of May 14, 2024, "delays were materially impairing the conversion of backlog into revenue"—and as discussed above, they have not, *see supra* at 3-5—Mr. Shugar's alleged omission of that purported "fact" would not be actionable. Omissions are actionable under Section 10(b) *only* if a defendant's statements "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Mr. Shugar's undisputedly accurate statements about Nextracker's backlog growth in FY 2024, which said *nothing* about Nextracker's backlog-to-revenue conversion rate or project timelines or delays, do not qualify. Indeed, as the Motion explains, it is well-settled that positive statements about a company's historical results that, like Mr. Shugar's statements here, are not alleged to be inaccurate, are not actionable as a matter of law, *even if* present circumstances are less rosy. *See* Mot. 10-11; *Menon v. Maxeon Solar Techs., Ltd.*, 2025 WL 1223559, at *15 (N.D. Cal. Apr. 28, 2025) (collecting cases). Plaintiffs ignore the case law on this point and cite the unremarkable proposition that, in some circumstances not alleged here, "a statement that is literally true can be misleading and thus actionable." Opp. at 13. But Plaintiffs cannot cite any facts or law to support the notion that Mr. Shugar's generalized and accurate descriptions of Nextracker's historical results in FY 2024 can be rendered misleading by a failure to reference that project delays in FY 2025 were allegedly "materially impairing the conversion of backlog into revenue," *id*. at 12—because they cannot, *see Menon*, 2025 WL 1223559, at *18 ("[E]ven if there were problems related to two large Utility-Scale customers for 2024 Q1, [the challenged] Statement [] was about 2023 Q4; thus, a failure to reference the problems in 2024 Q1 cannot be said to be false or misleading."). The cases that Plaintiffs cite to

argue otherwise, *see* Opp. at 12-14, are inapposite because they involved complaints that pled particularized contemporaneous facts establishing the existence of known, undisclosed circumstances or conditions that were clearly at odds with the challenged statements.[1]

**Mr. Shugar's May 14, 2024 "market update" statement regarding the solar industry's growth (Mot. at 12-13, discussing the other statement challenged in AC ¶ 86):** Plaintiffs' arguments relating to this challenged statement are *non sequiturs*. *See* Opp. at 8-12 (section addressing this statement). They cite the Complaint's FE allegations, *see id.* at 9, but the FE allegations are not in any way inconsistent with Mr. Shugar's May 14, 2024 market update regarding the solar industry's growth, *see* Mot. at 12; *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (affirming dismissal because "[t]he [alleged] circumstances [were] not inconsistent with the statements"). Plaintiffs also argue that Mr. Shugar's update involved a "categorical denial[]" of "the impact of industry-wide headwinds on" Nextracker that was given "in response to direct analyst questions" and "conveyed the unmistakable impression that the Company was not experiencing the same delays plaguing its competitors." *See* Opp. at 8, 10-11. But Mr. Shugar did not give the update in response to any question—he gave it as part of his opening comments—nor did he say anything

---

[1] *See, e.g.*, *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 708 (9th Cir. 2016) (defendants "affirmatively represented that 'all the animal studies that [had] been completed' supported … [FDA] approval" despite knowing "that the animal studies were *the* sticking point with the FDA"); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 984-87 (9th Cir. 2008) (complaint adequately pled defendants "misl[e]d investors as to what [] backlog consisted of" by alleging "with particularity" both that "defendants counted stopped work as backlog" and the "existence and effect of the stop-work orders"); *Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 483 & n.3 (9th Cir. 2019) (complaint was "pled with particularity" and showed that statements "tout[ing] the 'real-time' nature of [company's] identity theft alerts" were contradicted by the fact that "more than 70% of a particular type of alert … were sent more than one week late"); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 995-96, 1010 (9th Cir. 2018) (despite FDA's warning that trial results "have 'a high degree of uncertainty and were likely to change," defendant issued SEC filing touting the results, and FDA officials responded by publicly "'condemn[ed] [defendant's] SEC filing as 'unreliable,' 'misleading,' and 'likely false'"); *Retail Wholesale Dept. Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*, 790 F. Supp. 3d 763, 776-77 (N.D. Cal. 2025) (defendants' "statements unequivocally lauding the successes of Direct Buy were [] inconsistent with [undisclosed] test results," and plaintiffs pled specific facts about the "[t]ests sufficient to meet the heightened pleading standard of Rule 9(b)"); *In re Atossa Genetics Inc. Sec. Litig.* 868 F.3d 784, 791, 794 (9th Cir. 2017) (statements describing product "as cleared by the FDA" were "directly contradicted" by undisclosed fact that "FDA sent a warning letter" "explicitly advis[ing]" that marketing the product as "FDA-approved" and "FDA cleared" was "false or misleading"); *In re Fastly, Inc. Sec. Litig.* 2025 WL 2721693, at *2, *7-9 (N.D. Cal. Sept. 24, 2025) (statement in Q4 2023 "tout[ing] that Fastly was not seeing *any* 'slowing in growth'" was adequately pled to be misleading, where defendants reported "lower-than-expected revenue for Q4 2023" and "lowered [their] revenue guidance," and plaintiffs alleged specific contemporaneous facts showing "revenue growth was slowing during … Q4 2023").

that could be described as a denial of the impact of industry-wide headwinds on Nextracker. *See* Ex. 9 at 4-5. Rather, after noting Nextracker's "history of 30% CAGR over the last five years" and "strong backlog," and acknowledging the existence of "real" "sector headwinds" like "interconnection permitting," Mr. Shugar said that the "total universe of projects and customers has grown such that in totality the market continued strong growth." AC ¶ 86. Plaintiffs do not, and cannot, allege any facts contradicting any assertion within that statement because it was entirely consistent with reality. *See* Mot. at 12. Thus, under the precedent cited in the Motion, the statement is not actionable. *Id.* at 12-13 (citing multiple on point cases from the Ninth Circuit).[2] Again, the cases that Plaintiffs cite to argue otherwise, *see* Opp. at 8, 10-11, are inapposite, as they involved complaints that pled specific contemporaneous facts establishing the existence (and the defendants' awareness) of undisclosed circumstances that were directly contrary to the challenged statements.[3]

---

[2] Plaintiffs try to distinguish *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092 (9th Cir. 2022) on the basis that the statements at issue there only involved "unprompted general opening comments" rather than statements "given in response to direct analyst questions on the precise topic" that was allegedly misrepresented. *See* Opp. at 10-11. But most of the statements in *Macomb* were, in fact, given "*in response to an analyst question about growth rates*" in China (the allegedly misrepresented topic). 39 F.4th at 1099 (emphasis added). Plaintiffs also try to distinguish *Kong v. Fluidigm Corp.*, 2023 WL 2134394 (9th Cir. Feb. 21, 2023) and *Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568 (N.D. Cal. June 19, 2020) on the basis that the companies there were experiencing "strong" or "record" growth. *See* Opp. at 11. But Plaintiffs ignore the undisputed fact that *Nextracker too* was experiencing "strong" or "record" growth. *See id.* at 13 ("Shugar reaffirmed *record* revenue, profits and backlog" (emphasis added)); *see also* Mot. at 7; *supra* at 3-5.

[3] *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 928, 938-40 (N.D. Cal. 2022) (following "significant earnings miss," plaintiffs pled specific contemporaneous facts that were contrary to defendants' "positive representations"); *Leventhal v. Chegg, Inc.*, 721 F. Supp. 3d 1003, 1012-14 (N.D. Cal. 2024) (following education company's "disappointing results" and "lowered" guidance, plaintiffs pled that statements regarding "minimal cheating" were false by alleging, "with particularity," "extensive documents and interviews," "compelling empirical evidence," and multiple FE accounts showing "that [substantial] cheating occurred"); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1136, 1139, 1143-44 (9th Cir. 2017) (following defendants' admission "that the company's business was in steep decline," plaintiffs alleged specific contemporaneous facts showing that positive statements about sales pipeline "were inconsistent with real-time financial information"); *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 756-57, 768-70 (9th Cir. 2023) (following "poor financial results" and "missed" projections, plaintiffs pled that positive statements about sales pipeline were misleading by providing "detailed factual allegations" showing the "company had a widespread practice of classifying illusory deals as 'committed' and including those deals in their forecasts"); *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 869, 880-81 (N.D. Cal. 2023) (after company "lowered its [] guidance" and reported its "lowest [] growth" ever, plaintiffs pled that positive statements about demand were misleading by alleging "in significant detail" contemporaneous facts that were inconsistent with those statements); *In re Vaxart, Inc. Sec. Litig.*, 576 F. Supp. 3d 663, 666, 669-71 (N.D. Cal. 2021) (defendants made "highly misleading" statements, as confirmed by, among other things, government's public refutation of the statements).

**Mr. Wenger's May 14, 2024 statement about being "pleased" with backlog growth in FY 2024 and Nextracker's "typical" backlog-to-revenue timeline (Mot. at 13-16, discussing the statement challenged in AC ¶ 88):** Plaintiffs do not acknowledge or dispute that Mr. Wenger's comment about how long it "typically" takes for backlog to convert to revenue is protected from liability by the PSLRA's safe harbor for forward-looking statements. *See* Mot. at 14-16; Opp. at 8-12 (section addressing this statement). Plaintiffs concede the point. *See Tyler*, 499 F. Supp. 3d at 701.

As for the Motion's other points relating to Mr. Wenger's statement, Plaintiffs argue that the statement was not a "vague expression[] of corporate optimism, but [an] explicit denial[] made in direct response to specific questions about whether NXT was experiencing elongation in backlog conversion." Opp. at 10. But this argument ignores the actual content of Mr. Wenger's statement, which does not contain any "denial." *See* Ex. 9 at 10. It also ignores the numerous cases within the Ninth Circuit holding virtually identical "we're pleased with our growth" statements are not actionable as a matter of law. *See* Mot. at 13 (collecting cases). Plaintiffs say that Mr. Wenger's statement "went beyond puffery and optimism" to provide a "concrete description of the past and present state of NXT's backlog and revenue conversion rate," Opp. at 11 (brackets omitted), but Plaintiffs do not, and cannot, cite any specific contemporaneous facts in the Complaint that are inconsistent with that purported "concrete description." At the time of Mr. Wenger's statement, Nextracker had reached "a new record backlog of over $4 billion,' a 50% increase over the prior year," AC ¶ 86, so his comment, "We're pleased with the growth of our backlog," was entirely justified, *see* Mot. at 14. And the Complaint alleges zero contemporaneous facts to show that, as of May 14, 2024, Nextracker's backlog did *not* "typically" convert to revenue "in two to eight quarters and most of that in two to five quarters," as Mr. Wenger said. *Id.* at 14 & n.3. The FE allegations that Plaintiffs cite to argue otherwise, *see* Opp. at 9-10, say *nothing* about Nextracker's backlog-to-revenue conversion rates at any point in time, let alone as of May 14, 2024, *see* AC ¶¶ 40-66.

**The May 28, 2024 risk disclosures (Mot. at 16-17, discussing the two risk disclosure statements challenged in AC ¶¶ 90, 92):** Like the Complaint, the Opposition asserts that the challenged risk disclosures "were materially false" when issued because project "delays had already materialized and were already materially impairing NXT's ability to convert backlog into revenue."

Opp. at 14. But again, the Complaint contains no specific contemporaneous facts to support that conclusory assertion. *See supra* at 3-5. To the contrary, it acknowledges that Nextracker's revenue in the quarter in which the risk disclosures were made were "well above expectations." AC ¶ 99. That undisputed fact forecloses the conclusory assertion that, as of May 28, 2024, the risk warned of had "already materialized." *See* Mot. at 16-17. In response, Plaintiffs argue that their FE allegations "confirm that delays were ongoing and escalated to senior leadership well before … May 28, 2024." Opp. at 15. But the risk disclosures did not warn about the risk that project delays might occur in the abstract; rather, they warned about the risk that such delays might "*have a material adverse effect*" on Nextracker, AC ¶ 90 (emphasis added), or "cause [its] results … for a particular period *to fall below expectations*," *id.* ¶ 92 (emphasis added). Those risks undisputedly had *not* materialized as of May 28, 2024. *See supra* at 2. For that reason, Plaintiffs' citation to *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 948 (9th Cir. 2023), *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702 (9th Cir. 2021), and *Forescout*, 63 F.4th at 781, *see* Opp. at 14-15, is misguided. Unlike here, the relevant risks there had already materialized before the issuance of the challenged risk disclosures.

Moreover, as the Motion explains—and the Opposition ignores—unlike in cases like the ones Plaintiffs cite where the challenged risk disclosures concern a discrete, relatively rare risk (*e.g.*, a data breach in *Facebook* and *Alphabet*, the termination of a merger in *Forescout*), a "risk disclosure is not misleading as a matter of law where [as here] it concerns a risk that is inherent in running a business, always present to some extent." Mot. at 17 (quoting *Waswick v. Torrid Holdings, Inc.*, 2023 WL 9197563, at *7 (C.D. Cal. Dec. 1, 2023)). As discussed, the Complaint admits that: (i) investors "knew" that "interconnection and permitting issues routinely" delay projects; and (ii) Defendants repeatedly told investors that Nextracker experienced such delays. *See id.* at 17 & n.4. Given those admissions, Plaintiffs' argument that the risk disclosures "were misleading because they suggested only the possibility of delays," Opp. at 16, is implausible—no reasonable investor reading the risk disclosures would think that, as of May 28, 2024, Nextracker had *not* already experienced interconnection or other delays, and thus the risk disclosures are not actionable, *see* Mot. at 17; *see also Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) ("[T]hese challenged statements contain no explicit or implicit representation that Tesla had *not* already experienced such issues.").

**Mr. Boynton's June 17, 2024 opinion statement about Nextracker's "resiliency" relative to other companies (Mot. 17-19, discussing the statement challenged in AC ¶ 94):** Plaintiffs offer very little in defense of this challenged statement. *See* Opp. at 8-12 (section addressing this statement). In addition to making the unsupported assertion that project "delays had already materially impaired the Company's revenue recognition," *id.* at 8, the Opposition mischaracterizes Mr. Boynton's June 17, 2024 statement. He did not "[c]ategorical[ly] den[y]" that Nextracker was "experiencing [the] negative impact from 'project timing delays'" that other companies in the industry had been experiencing. *See id.* at 8-9. Rather, as the Motion explains, in response to a question about why Nextracker "seems to be coming through *relatively less* scathed" from project delays than other "companies in US utility-scale," Mr. Boynton gave his qualified opinion that Nextracker "*probably* ha[d] been *a little more* resilient." Mot. at 18 (quoting Ex. 10 at 2). Plaintiffs assert that "Defendants' efforts to reframe" Mr. Boynton's statement as an opinion "are unavailing," but Plaintiffs do not cite any facts or law supporting that assertion. *See* Opp. at 10-11 (citing inapposite cases discussed above, *supra* at ns.1 & 3). And even if analyzed as a statement of fact, rather than opinion, Mr. Boynton's statement is "not actionable under [the] securities laws" because the "[C]omplaint contains no allegations contrary to [his] assertion[] regarding" Nextracker's resiliency *relative to other companies*. *Macomb*, 39 F.4th at 1099. Moreover, Plaintiffs ignore Mr. Boynton's acknowledgment that Nextracker was not immune to project delays, *see* Ex. 10 at 2 ("Things do happen. Projects get pushed out…."), and the undisputed fact that, despite any delays, Nextracker performed "within the outlook" that Defendants provided to investors, just as Mr. Boynton said it would, *id.* at 4; *see* Mot. at 7; *supra* at 2. Against that backdrop, Plaintiffs cannot plausibly allege that Mr. Boynton affirmatively created an impression of Nextracker's state of affairs that differed materially from the one that actually existed on June 17, 2024. *See* Mot. at 19.

Finally, as the Motion points out, Mr. Boynton's statement is too vague and generalized to be actionable under the securities laws. *See* Mot. at 19. Plaintiffs argue that "[t]hese statements went beyond puffery and optimism given the context in which they were made and the fact that they provide a 'concrete description of the past and present state of NXT's backlog and revenue conversion rate.'" Opp. at 11 (brackets omitted). But this argument is a *non sequitur*, as this

DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 5:24-cv-09467-PCP

challenged statement makes no reference to the past or present state of Nextracker's backlog or revenue conversion rate. *See* Mot. at 18; AC ¶ 94. Plaintiffs also tellingly make no attempt to show how Mr. Boynton's vague and generalized statement that Nextracker was "a little more resilient" is distinguishable from the virtually identical "resiliency" statements that courts in the Ninth Circuit have repeatedly held are not actionable as a matter of law. *See* Mot. at 19 (collecting cases).

### D.    Plaintiffs Fail To Allege A "Strong Inference" Of Scienter

As the Motion shows, Plaintiffs' Section 10(b) claim must also be dismissed because they fail to plead particularized facts creating a "strong inference" that any of the seven challenged statements were made with an intent to defraud or deliberate recklessness—with scienter—as required by the PSLRA. *See* Mot. at 19-25. The Opposition offers no viable response.

As an initial matter, it ignores the Motion's demonstration that Plaintiffs fail to satisfy the PSLRA's "strong inference" of scienter standard because: (i) they do not allege any motive for the alleged fraud; (ii) their claim defies common sense, as there is no logical reason why Defendants would, as Plaintiffs claim, mislead investors about the impact of project delays on Nextracker's financial results, only to voluntarily come clean just a few months later by, according to Plaintiffs, admitting that delays had impacted Nextracker; and (iii) the innocent inference is by far the most compelling inference given that Nextracker's financial results undisputedly exceeded the expectations that Defendants set and disclosed to investors on day one of the Class Period. *See id.* at 24-25; *Endologix*, 962 F.3d at 415. By failing to address these points, Plaintiffs concede that they fail to plead a "strong inference" of scienter under the PSLRA. *See Tyler*, 499 F. Supp. 3d at 701.

The scienter arguments that Plaintiffs do make are meritless in any event. "Only where a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness will [the Ninth Circuit] overlook the failure to allege a plausible motive." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021). But as shown above and in the Motion, the Complaint is devoid of compelling and particularized facts indicating that the Individual Defendants who made the challenged statements "knew of or deliberately disregarded information that was contrary to the statements they were making." Mot. at 20 (citations omitted); *see id.* at 21-24; *supra* at 3-5. The Opposition's arguments otherwise misrepresent the Complaint's

allegations, the challenged statements, and the case law on which Plaintiffs rely. *See* Opp. at 16-24.

For example, the Opposition argues that scienter is established by the Individual Defendants' statements in "response to analysts' direct questions" that were "contrary to known information," and cites *Avaya* as being "directly on point." *See id*. at 16-18. Putting aside that, as discussed above, the Complaint does not come close to adequately pleading the existence of undisclosed information that was contrary to the challenged statements, *see supra* at 3-5, *Avaya* could not be more inapposite. *Avaya* involved: (i) a company announcing "horrid" financial results that fell far short of the projections that the defendants had reaffirmed just one month earlier; (ii) challenged statements that were undisputedly inconsistent with the undisclosed facts that caused the company to miss its projections; (iii) detailed FE allegations that established the existence of facts contrary to the challenged statements; (iv) defendants that "flatly" denied the existence of the pricing discounts that caused the projection misses; and (v) a motive to defraud, including insider trading. *See* 564 F.3d at 246-51, 269-72, 277-78. The other cases that Plaintiffs cite are equally inapposite.[4] Fundamentally, Plaintiffs fail to adequately plead scienter because they do "not identify any specific information that was either received or communicated by any Individual Defendant that would contradict any [of their] public statement[s]." *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019).

The Opposition also notes that "allegations of scienter [are] adequately pled in cases where the complaint allege[s] the existence of specific internal information, specific access to that information by the relevant principles, and specific public statements that directly contradict the internal information accessed by the defendants," Opp. at 18 (citations omitted), and citing the Complaint's FE allegations, argues that this is such a case, *see id.* 18-23. But again, Plaintiffs have not adequately pled any public statements that "directly contradict" any internal information—the Complaint's FE allegations simply do not support that premise. *See supra* at 3-5. And as the Motion

---

[4] *See supra* at n.3, which shows just some of the ways that *Forescout* and *Quality Sys.* are inapposite. Also, unlike here, *Quality Sys.* involved "massive and uncharacteristic" insider trading by the defendants, as well as admissions by the defendants that "they had real-time access to, and knowledge of, [] information" that contradicted their statements. 865 F.3d at 1145-46. Similarly, unlike here, *Forescout* also involved a complaint that "alleged with particularity that [defendants] accessed [] internal reports" and alleged "particularized details about the data" in those reports. 63 F.4th at 773; *see also Reese v. Malone*, 747 F.3d 557, 576-77 (9th Cir. 2014) (defendant's "own very specific representations" established that she knew of "information contradicting her statements").

demonstrates, the FEs lack personal knowledge of the Individual Defendants' mental state at the time they made the challenged statements—four of the five FEs are not alleged to have ever interacted with those Defendants, a point the Opposition does not dispute and that the Ninth Circuit recently confirmed is highly relevant—and their assertions lack the specificity in time, context, and details that Ninth Circuit precedent requires. *See* Mot. at 21-24; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995-1000 (9th Cir. 2009); *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1134 (9th Cir. 2025) ("Plaintiffs depend heavily on statements from confidential witnesses … [b]ut the confidential witness statements … do not show scienter … as most witnesses never interacted with [the individual defendants]."). At most, the FEs assert, without specificity in time, context, or details, that the Individual Defendants were "involved with the day-to-day workings of [Nextracker], such as receiving reports," but such "allegations of 'corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter.'" *Espy v. J2 Global, Inc.*, 99 F.4th 527, 538-39 (9th Cir. 2024). None of the FEs provide: (i) any information to show the impact, material or otherwise, of any project delays on Nextracker's revenue at any point in time; (ii) detail the contents of any specific report with data contradicting any of the challenged statements; or (iii) specifically link any such report to the Individual Defendants who made the statements. *See* Mot. at 21-24. "Mere access to reports containing undisclosed [] data is insufficient to establish a strong inference of scienter," especially where, as here, the alleged FEs do "not detail the actual contents of the reports the executives purportedly referenced or had access to." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014); *see also Endologix*, 962 F.3d at 416 ("'[N]egative characterizations of reports … without specific reference to the contents of those reports, are insufficient … [under] the PSLRA.'"). Plaintiffs tellingly do not address the numerous cases from the Ninth Circuit cited in the Motion that found similar FE allegations were inadequate to plead scienter. And the cases Plaintiffs cite in defense of the Complaint's FE allegations, *see* Opp. at 20-21, are easily distinguishable because, unlike here, the plaintiffs there pled *particularized* FE allegations that *specifically* tied the individual defendants to *contemporaneous* information that *contradicted* the challenged statements, and such allegations were corroborated by *additional* facts

creating a strong inference of scienter, such as insider trading or admissions by the defendants.[5]

Finally, the Opposition cites the "core operations" theory. *See* Opp. at 23-24. Pleading scienter "under this theory is not easy," as it requires "specific admissions" by the Individual Defendants establishing their awareness of reports containing information contrary to their public statements, or particularized facts "linking specific reports and their content" to the Individual Defendants, *Intuitive Surgical*, 759 F.3d at 1062-63—which are lacking here. And given Nextracker's positive results and tremendous growth during the Class Period and beyond, *see supra* at 2; Mot. at 7, "this is not the 'rare circumstance' in which it would be 'absurd' to suggest" that the Individual Defendants were "without knowledge" of a "relevant fact" that would have revealed the purported falsity of their statements, *Intuitive Surgical*, 759 F.3d at 1062-63. Indeed, Plaintiffs have "not identified any relevant fact that *contradicts* Defendants' statements, much less any fact 'of such prominence' that the Individual Defendants must have known it." *Dolly*, 2025 WL 2372965, at *14 (emphasis added); *see also Sneed*, 147 F.4th at 1134 (no scienter under this prong of the core operations theory where the alleged falsity of the statements at issue was not "'patently obvious'").

### III.    CONCLUSION

The Complaint should be dismissed with prejudice.[6]

---

[5] *See, e.g.*, *Quality Sys.*, 865 F.3d at 1145 ("particularized allegations" from FEs established that defendants "had access to and used reports documenting in real time the decline in sales," and defendants "themselves told investors they had real-time access to, and knowledge of, sales information"); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1186-96 (C.D. Cal. 2008) (scienter was adequately pled with voluminous "public sources and Countrywide internal documents," "corroboration furnished by … numerous [FE] witness accounts," insider trading, and the fact that each defendant "against whom scienter [was] alleged publicly professed knowledge of [the relevant fact] at the time in question"); *Grae v. Corr. Corp. of Am.*, 2017 WL 6442145, at *20 (M.D. Tenn. Dec. 18, 2017) (FE allegations of defendants' awareness of contradictory facts were corroborated by company's "own public statements"); *Sinnathurai v. Novavax, Inc.*, 645 F. Supp. 3d 495, 526-30 (D. Md. 2022) (finding FE allegations were "imperfect" and "not alone sufficient to establish a strong inference of scienter," and relying on other, additional allegations to find scienter); *Ross v. Career Educ. Corp.*, 2012 WL 5363431, at *9-10 (N.D. Ill. Oct. 30, 2012) (detailed FE allegations "indicate[d] that 'everyone' at CEC, including [defendant], was informed directly of [the] problems," and "defendant's resignation" corroborated that conclusion). Some of the cases that Plaintiffs cite do not even address the sufficiency of FE allegations. *See, e.g.*, *Alphabet*, 1 F.4th at 705-07; *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

[6] Plaintiffs do not dispute that: (i) their failure to state a Section 10(b) claim means that their Section 20(a) claim must also be dismissed; or (ii) their Section 20(a) claim independently fails as to Mr. Miller because no facts are alleged to show that he controls Nextracker. *See* Mot. at 25; Opp. at 24.

Dated: November 14, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                            */s/ James N. Kramer*
                                            JAMES N. KRAMER